## TOWNSEND v. BURKE, WARDEN.

No. 542. Argued April 27, 1948.—Decided June 14, 1948.

*Archibald Cox* argued the cause and filed a brief for petitioner.

*Franklin E. Barr* argued the cause for respondent. With him on the brief was *John H. Maurer.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

The Commonwealth of Pennsylvania holds petitioner prisoner under two indeterminate sentences, not exceeding 10 to 20 years, upon a plea of guilty to burglary and robbery. On review here of the State Supreme Court's denial of *habeas corpus*,[1] the prisoner demands a discharge by this Court on federal constitutional grounds.

Petitioner, while a fugitive, was indicted on June 1, 1945, for burglary and armed robbery. Four of his alleged accomplices had been arrested on May 18, 1945, and signed a joint confession, while a fifth had been arrested on May 21, 1945, and had also confessed. Petitioner was arrested on June 3, 1945, and confessed on June 4. On June 5, after pleading guilty to two charges of robbery and two charges of burglary and not guilty to other charges, he was sentenced.

Petitioner now alleges violation of his constitutional rights in that, except for a ten-minute conversation with his wife, he was held incommunicado for a period of 40

---

[1] Respondent raised no procedural or jurisdictional issues in this Court or in the State Supreme Court. Since petitioner has throughout based his claim for relief solely on alleged deprivation of federal constitutional rights, we assume that those questions were considered by the Supreme Court of Pennsylvania and are therefore open here. *Herndon* v. *Lowry*, 301 U. S. 242, 247.

hours between his arrest and his plea of guilty. He does not allege that he was beaten, misused, threatened or intimidated, but only that he was held for that period and was several times interrogated. He does not allege that the questioning was continuous or that it had any coercive effect.

The plea for relief because he was detained, as he claims, unlawfully is based on *McNabb* v. *United States,* 318 U. S. 332. But the rule there applied was one against use of confessions obtained during illegal detention and it was limited to federal courts, to which it was applied by virtue of our supervisory power. In this present case no confession was used because the plea of guilty in open court dispensed with proof of the crime. Hence, lawfulness of the detention is not a factor in determining admissibility of any confession and if he were temporarily detained illegally, it would have no bearing on the validity of his present confinement based on his plea of guilty, particularly since he makes no allegation that it induced the plea.

Petitioner also relies on *Haley* v. *Ohio,* 332 U. S. 596, in which this Court reversed a state court murder conviction because it was believed to have been based on a confession wrung from an uncounseled 15-year-old boy held incommunicado during questioning by relays of police for several hours late at night. Even aside from the differing facts, that case provides no precedent for relief to this prisoner since, as has been said, no confession was used against him, and he does not allege that his pleas of guilty resulted from his allegedly illegal detention.

Petitioner also says that when he was brought into court to plead, he was not represented by counsel, offered assignment of counsel, advised of his right to counsel or instructed with particularity as to the nature of the crimes with which he was charged. This, he says, under the circumstances deprived his conviction and sentence

of constitutional validity by reason of the due process clause of the Fourteenth Amendment.[2]

Only recently a majority of this Court reaffirmed that the due process clause of the Fourteenth Amendment does not prohibit a State from accepting a plea of guilty in a non-capital case from an uncounseled defendant. *Bute* v. *Illinois,* 333 U. S. 640. In that, and in earlier cases, we have indicated, however, that the disadvantage from absence of counsel, when aggravated by circumstances showing that it resulted in the prisoner actually being taken advantage of, or prejudiced, does make out a case of violation of due process.

The proceedings as to this petitioner, following his plea of guilty, consisted of a recital by an officer of details of the crimes to which petitioner and others had pleaded guilty and of the following action by the court (italics supplied):

"By the Court (addressing Townsend):

"Q. Townsend, how old are you?

"A. 29.

"Q. You have been here before, haven't you?

"A. Yes, sir.

"Q. *1933, larceny of automobile.* 1934, larceny of produce. 1930, larceny of bicycle. 1931, entering to steal and larceny. *1938, entering to steal and larceny in Doylestown.* Were you tried up there? No, no. Arrested in Doylestown. That was up on Ger-

---

[2] The Supreme Court of Pennsylvania has frequently held that the state constitutional provision according defendants the right to be heard by counsel does not require appointment of counsel in non-capital cases. See, for example, *Commonwealth ex rel. McGlinn* v. *Smith,* 344 Pa. 41, 24 A. 2d 1; *Commonwealth ex rel. Withers* v. *Ashe,* 350 Pa. 493, 39 A. 2d 610. See also *Betts* v. *Brady,* 316 U. S. 455, 465. The Pennsylvania statutes require only that destitute defendants accused of murder shall be assigned counsel. Act of March 22, 1907, 19 Pa. Stat. Ann. § 784.

mantown Avenue, wasn't it? You robbed a paint store.

"A. No. That was my brother.

"Q. You were tried for it, weren't you?

"A. Yes, but I was not guilty.

"Q. And 1945, this. 1936, entering to steal and larceny, 1350 Ridge Avenue. Is that your brother too?

"A. No.

"Q. *1937, receiving stolen goods, a saxophone.* What did you want with a saxophone? Didn't hope to play in the prison band then, did you? .

"The Court: Ten to twenty in the Penitentiary."

The trial court's facetiousness casts a somewhat somber reflection on the fairness of the proceeding when we learn from the record that actually the charge of receiving the stolen saxophone had been dismissed and the prisoner discharged by the magistrate. But it savors of foul play or of carelessness when we find from the record that, on two others of the charges which the court recited against the defendant, he had also been found not guilty. Both the 1933 charge of larceny of an automobile, and the 1938 charge of entry to steal and larceny, resulted in his discharge after he was adjudged not guilty. We are not at liberty to assume that items given such emphasis by the sentencing court did not influence the sentence which the prisoner is now serving.

We believe that on the record before us, it is evident that this uncounseled defendant was either overreached by the prosecution's submission of misinformation to the court or was prejudiced by the court's own misreading of the record. Counsel, had any been present, would have been under a duty to prevent the court from proceeding on such false assumptions and perhaps under a duty to seek remedy elsewhere if they persisted. Consequently, on this record we conclude that, while disadvantaged by

lack of counsel, this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue. Such· a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand.

We would make clear that we are not reaching this result because of petitioner's allegation that his sentence was unduly severe. The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of *habeas corpus*. It is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process.

Nor do we mean that mere error in resolving a question of fact on a plea of guilty by an uncounseled defendant in a non-capital case would necessarily indicate a want of due process of law. Fair prosecutors and conscientious judges sometimes are misinformed or draw inferences from conflicting evidence with which we would not agree. But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law.

In this case, counsel might not have changed the sentence, but he could have taken steps to see that the conviction and sentence were not predicated on misinformation or misreading of court records, a requirement of fair play which absence of counsel withheld from this prisoner.

*Reversed.*

THE CHIEF JUSTICE, MR. JUSTICE REED, and MR. JUSTICE BURTON dissent.