Commonwealth ex rel. Wright, Appellant, *v.*
Day.

Argued March 7, 1955. Before RHODES, P. J., HIRT,
ROSS, WRIGHT, WOODSIDE and ERVIN, JJ. (GUNTHER,
J., absent).

*Nicholas R. Degillio,* for appellant.

*Louis G. Feldmann,* District Attorney, with him
*Jonathan C. Valentine,* First Assistant District Attor-

ney, and *Robert J. Hourigan,* Assistant District Attorney, for appellee.

OPINION PER CURIAM, July 21, 1955:

Relator presented a petition for writ of habeas corpus to the Court of Common Pleas of Luzerne County on March 31, 1954.

In his petition relator alleged (1) that he was arrested without a warrant and unduly detained before he was given a preliminary hearing; (2) that he entered his pleas and was sentenced behind closed doors; (3) that his conviction and sentences were brought about by cruel and unusual punishment; (4) that he had waived a major fundamental right, to wit, the right to be represented by counsel; (5) and that the court lost jurisdiction of relator by sanctioning the illegal actions of the police officers, by disregarding his constitutional rights, and by taking advantage of a bewildered and unskilled petitioner.

Answers were filed by the warden of the Eastern State Penitentiary and the District Attorney of Luzerne County.

A hearing was held on April 20, 1954, before Judge LEWIS in the Court of Common Pleas of Luzerne County. Relator was present with counsel and testified. After an extensive hearing, Judge LEWIS discharged the rule to show cause and dismissed the petition. Relator has appealed to this Court.

The trial record and the record in the habeas corpus proceeding disclosed that relator was given every possible consideration in the Court of Oyer and Terminer and in the Court of Common Pleas, and there has been no denial of due process or other infringement of his constitutional rights.

Relator was charged in twenty-two bills of indictment, in the Court of Oyer and Terminer of Luzerne

County, with burglary and larceny, and in one bill with arson. The court record of the entry of the pleas of guilty by relator on June 9, 1953, shows that relator appeared in court, waived the right to a jury trial, and entered pleas of guilty to the crimes charged without the presentation of the indictments to the grand jury. It further appears that relator waived the right to counsel, and that such waiver was understandingly and voluntarily made. The habeas corpus proceeding is confirmatory of the fact that relator's pleas were voluntarily, freely, and intelligently entered, and that the absence of counsel did not result in the denial to relator of the essentials of justice.

In his opinion dismissing relator's petition, Judge LEWIS reviewed the facts and conclusively disposed of relator's contentions:

"A hearing was held in open court [June 9, 1953], Court Room No. 4, County Court House, at Wilkes-Barre, Pennsylvania, at which an official stenographer was present.

"Prior to the taking of any testimony petitioner was informed of the charges in each indictment . . . and he was asked by the Assistant District Attorney: 'Q. . . . you have already entered a plea of guilty on all these charges; is that correct? A. That is correct.'

"The following thereafter appears in the record: 'Q. You are willingly entering that guilty plea? A. Yes, sir. Q. Are you willing to waive the right of counsel? A. I am.'

"Thereupon the Assistant District Attorney specifically read the charges in indictments 178, 179, 194 June Sessions 1953, charging the crime of burglary and larceny, and again, to each separate indictment, he admitted his guilt.

"The Assistant District Attorney again asked:

'Q. And in all those charges you don't desire to be represented by counsel.'

"He replied: 'A. That's right.'

"Whereupon the court again questioned the petitioner, and he admitted his guilt in each of the twenty-three cases.

"The court further questioned: 'Q. And you are entering these pleas voluntarily and of your own free will.'

"He replied: 'A. Yes, sir. Q. And you understand the importance and the seriousness and the significance of these charges, do you? A. I do, sir. Q. And you are willing to enter all these pleas and admit the commission of these crimes without having a lawyer to consult with you? A. Yes. Q. You are sure of that. A. Yes.'

"Thereafter testimony was given by police officers in connection with several of the indictments, that is those charging the offenses upon which he was later sentenced. He was afforded an opportunity to examine each witness.

"The evidence disclosed that some of the items stolen and mentioned in indictments 178, 179, 194 June Sessions 1953, were found in defendant's possession.

"Thereafter Wright was sentenced in these three cases, as well as 189 June Sessions 1953 (Arson), the terms to run consecutively.

"After Petitioner was remanded he complained to the Warden of Luzerne County Prison and wrote a letter to the court, advising that he had been assaulted by State Police Officers between the date of his arrest June 6, and the date that he appeared in court.

"The petitioner was again brought before the court on June 10. A further hearing was held with an official stenographer reporting the proceedings. On this occasion he stated that he was not guilty of the charge of arson and that he was not guilty of some of the other

charges to which he had pleaded guilty the day before.

"However, he reaffirmed his guilt in the three cases of burglary and larceny on which he had been sentenced. Furthermore, in these three cases witnesses were called to identify articles stolen from burglarized premises, which were found in the possession of the petitioner. In addition the mode of entry was described and it agreed with the petitioner's version.

"The petitioner was returned to the Luzerne County Prison. The Court directed the District Attorney to investigate petitioner's charge of abuse by the officers.

"On June 26, 1953, petitioner again appeared in open court and a record of these proceedings was made by an official stenographer. In this hearing it developed that he had conferred with the District Attorney on the afternoon of June 10, 1953 and thereafter, and advised him that he was not guilty of the charge of arson, and that he was guilty of only twelve charges of burglary, including the three on which he had been sentenced.

"Each case was again reviewed separately, and he not only specifically admitted his guilt to the charges in each of the twelve cases, but also to the charge in one additional indictment. So, on June 26, 1953, twenty days following his arrest and seventeen days after he first appeared in court, the petitioner, in open court, specifically and separately again admitted his guilt to thirteen indictments charging burglary. He denied his guilt in the other nine cases of burglary and to the charge of arson.

"The District Attorney furnished the Court with a report with reference to the petitioner's charge that the officers had abused him while in their custody. The Court stated then: 'If any force was used upon you,

the Court is satisfied that it was fully justified and warranted, under the circumstances.'

"Perhaps we would more clearly have conveyed our thought if we had said that force was necessary to prevent petitioner's escape. The officer in charge had attempted to arrest this same petitioner at an earlier date and he did escape.

"A careful examination of the investigation made in connection with the alleged assault will reveal that the petitioner intended to escape from the jail by pushing the officer to one side when the latter opened his cell door, he, the petitioner, not knowing that Officer McMahon stood between the cell and the outside door of the building at a point where he could not be seen by the petitioner in the cell.

"Then again it is important to note that the Court's statement was made on June 26, 1953. When the petitioner was originally sentenced on four cases there had been no mention of any assault, and therefore the statement made on June 26 in no way reflected the state of mind of the Court at the time original sentences were imposed. It was not until June 10, the day after the sentence, that the petitioner called the Court's attention to the alleged assault by the police officer, and it was then that the Court directed the District Attorney to investigate the same. And, as hereinbefore stated, whatever force was used upon the petitioner had no effect whatsoever upon his admissions in open court, the last of which were made on June 26, twenty days following the date of the alleged assault.

"His statement, no matter how procured, was not used in connection with his conviction. He was not in the custody of the police officers after June 9.

"On June 26 the Court amended the sentence in the arson case, 189 June Sessions 1953, so that it would run concurrently with the sentence imposed in 194 June

Sessions 1953. And on this date sentence was also imposed in indictments 183 June Sessions and 196 June Sessions. So that as of June 26, seventeen days following his first confinement in Luzerne County Prison, the petitioner was sentenced only in cases wherein he admitted his guilt in open court on three occasions, June 9, June 10, and June 26, 1953, with the exception of the sentence in the arson case which sentence, however, runs concurrently with that imposed in 194 June Sessions, 1953. In all of the burglary-larceny cases, articles stolen from burglarized premises were found either in the immediate possession of the petitioner, in his automobile, or in his home.

"The petitioner, on the 26th day of June 1953, admitted to this Court that he was guilty of a burglary at Windgap, Pennsylvania, about the same time of the burglaries set forth in the above indictments, and we took judicial notice of our own court records which indicate that on the 23rd day of June 1952, this same petitioner was sentenced in this court, VALENTINE, P.J., to a minimum term of eleven months, and a maximum term of twenty-two months in the Luzerne County Jail on the charge of burglary, and he was on parole at the time of his arrest in the cases involved in these proceedings. . . .

"The hearing [April 20, 1954] on the petition and rule was held in open court in Court Room No. 4, Luzerne County Court House, LEWIS, J., presiding. The petitioner was present together with his counsel, Nicholas R. Degillio.

"Although the petition for the writ embodied only four of the indictments upon which he was sentenced, in order to protect the petitioner as well as to avoid additional and further proceedings in connection with two additional indictments upon which he had been sentenced, the Court directed that the proceedings be

amended to include all indictments upon which Wright had been sentenced.

"The petitioner and his counsel were given every opportunity to offer evidence in support of the petition and the Commonwealth was permitted to offer evidence in contradiction of the charges contained therein.

"The petitioner and his counsel admitted that the hearing was being held in open court. They further admitted that the hearings held on June 9, June 10, and June 26, 1953, were held in the same court room and in the same manner as the present proceedings. As a matter of fact, at the present hearing both petitioner and his counsel admitted at least four times . . . that the hearings held June 9, June 10, and June 26 were in open court. Furthermore, the petitioner, following his sentence, received a transcript of the testimony taken in open court on the days of the respective hearings.

"Therefore, petitioner's allegation that his hearings and sentence in connection therewith were behind closed doors are without foundation and absolutely false. .

"In his petition Wright alleges that he was arrested without a warrant. According to the testimony of the police officers as well as that of Beach Curwood, Justice of the Peace, both a warrant and a search warrant issued on June 6, 1953, and both instruments were identified at the hearing on the petition. This allegation was false.

"Following his arrest on June 6, the officers procured a search warrant and conducted investigations into the many charges against the petitioner prior to his arraignment on the 9th.

"Petitioner complains that at various stages of the proceedings he was not represented by counsel. As in-

dicated heretofore, he was asked many times before sentence, whether he desired counsel. At the hearing on his petition his attention was called to various times when he stated a willingness to proceed with the hearing without the benefit of counsel, and he agreed to the accuracy of the records in those proceedings. Furthermore, at the hearing upon the petition, . . . he admitted that he had previously known and had been represented by Attorney Nicholas R. Degillio, his present counsel. He further admitted that during his hearing before the court on June 26, 1953, Mr. Degillio was present in the court room in connection with another proceeding then being heard; that Mr. Degillio talked to him and that Mr. Degillio offered to help him. The offer was refused. Petitioner specifically declined the aid of his former counsel and now his court appointed counsel, and further, refused aid of counsel suggested by the court.

"This allegation is another falsification. . . .

"Petitioner alleges that his conviction and sentence were brought about by cruel and unusual punishment. As we have stated heretofore, Wright entered pleas of guilty on June 9, at least two days following the alleged assault by the officers. His confession, allegedly extracted as the result of the assault, was not used to secure his conviction. He appeared in court the next day, following his commitment to the county prison, and although then, for the first time, he told of the assault, he still admitted his guilt to the various charges. Between the 10th and the 26th of June he was in the county prison. During this period he was not in the custody of the police officers. He was not assaulted there and no coercion was used upon him. Nevertheless, because he had meanwhile changed his story, he was afforded an opportunity to prepare two lists of the crimes charged in the indictments. One

list contained those crimes to which he continued to admit his guilt (including those upon which he was sentenced, excepting the charge of arson), and the other list contained those charges of which he now claims he was innocent. These lists were prepared from memory, without copies of the charges or indictments. Furthermore, he appeared in court on June 26 and again admitted his guilt to charges in thirteen indictments.

"Certainly the alleged assault had no effect on his conduct in court on June 9, 10, or 26, nor did it compel him to prepare the list of crimes to which he admitted guilt between the 10th and 26th, following his sentence of the 9th. Neither could the alleged assault of the 7th have any effect on statements made to the Assistant District Attorney between the 10th and the 26th. His conviction and sentence on the burglary charges were brought about and are now sustained by (1) his plea of guilt in open court on the 9th; (2) his admission of guilt in open court on the 10th; (3) the identification by the owners thereof of stolen articles found in his possession, or home, or automobile, in court on the 10th; (4) his later admissions to the Assistant District Attorney; (5) the list prepared by him and delivered to the Warden of Luzerne County Prison; (6) his admissions made in open court on the 26th. Thus this allegation is without merit.

"Petitioner contends that the court sanctioned illegal acts of police officers and disregarded his constitutional rights by taking advantage of a bewildered and unskilled defendant.

"Immediately upon receiving a complaint that Wright had been assaulted, we directed an investigation by the District Attorney's office. From the investigation we concluded that although force had been

used on him on June 6th when arrested and later when being removed from the cell, it was necessary to avoid his escape from the officers. We believe he exaggerated the circumstances and facts, and we concluded then as we do now, that such force had no effect upon his admissions and statements from June 9 to June 26. An examination of the record discloses that Wright is and was not a bewildered and unskilled defendant, but on the contrary, a conniving and scheming individual with an excellent memory, with no regard for the truth or an oath."

At the habeas corpus hearing relator relied on *Townsend v. Burke*, 334 U. S. 736, 68 S. Ct. 1252, 92 L. Ed. 1690, and on *Com. ex rel. Carlini v. Burke*, 172 Pa. Superior Ct. 116, 92 A. 2d 267. Neither of these cases is applicable or controlling. In the *Townsend* case the prisoner, without counsel, entered pleas of guilty to burglary and robbery. The trial judge in imposing sentence had a misconception of the prisoner's criminal record upon which he had placed great emphasis. The court's remarks to the prisoner prior to sentence, relative to a charge which had been dismissed, together with the erroneous assumptions concerning his criminal record, warranted a reversal of the conviction. In the present case, relator was advised of his right to counsel but refused to be represented by counsel. Besides, corroborative testimony was taken at the time of the entry of the pleas which definitely established relator's guilt. The sentences imposed on relator were not based on any misapprehension of his criminal record, and at no time was any unfair attitude evidenced in the sentencing judge. See, also, *Com. ex rel. Bruce v. Burke*, 170 Pa. Superior Ct. 642, 90 A. 2d 258. In the *Carlini* case it appeared that relator may have been denied counsel, and further proceedings were directed.

A delay of four days between the arrest of relator and the preliminary hearing constituted no denial of due process. *Com. ex rel. Lockoski v. Claudy,* 172 Pa. Superior Ct. 330, 332, 94 A. 2d 203.

Under the circumstances, the credibility of the witnesses in the habeas corpus hearing was for the hearing judge to determine. The findings of fact of the hearing judge were supported by substantial and competent evidence, and we are convinced after a careful review of the extensive proceedings that the refusal of a writ of habeas corpus was clearly justified. See *Com. ex rel. Uhler v. Burke,* 172 Pa. Superior Ct. 108, 91 A. 2d 913.

The order of the court below is affirmed.