THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. ANTHONY MAGONIA, DEFENDANT-APPELLANT.

Argued September 16, 1957—Decided October 14, 1957.

*Mr. Joseph Butl* argued the cause for defendant-appellant.

*Mr. Frank J. V. Gimino,* Assistant Prosecutor, argued the cause for plaintiff-respondent (*Mr. Frederick T. Law,* Prosecutor).

The opinion of the court was delivered by
WEINTRAUB, C. J. On September 21, 1945 defendant shot and killed Joseph Kozlowski. He was indicted for

murder. On October 19, 1945 he entered a plea of not guilty and on March 5, 1946 withdrew it and pleaded *non vult*. Two weeks later Judge Ziegener (since deceased) sentenced defendant to life imprisonment pursuant to *N. J. S.* 2A:113–3, which provides that if a plea of *non vult* is accepted "the sentence to be imposed * * * shall be either imprisonment for life or the same as that imposed upon a conviction of murder in the second degree."

On June 27, 1955, more than nine years after the sentence, defendant submitted what he denominated a "Motion to Introduce New Evidence." His motion was denied. He did not seek to review that action, but rather on June 12, 1956 filed a "Motion to Vacate Present Sentence and Imposition of Proper Sentence," which in effect duplicated the showing on the first motion. Upon a hearing at which defendant was represented by assigned counsel, Judge Drewen concluded that on the face of the papers there was no basis for relief. From an order thereon, defendant appealed to the Appellate Division, which transferred the matter to this court for the reason that the cause is a capital one. *State v. Magonia,* 44 *N. J. Super.* 89 (*App. Div.* 1957).

We will pass all procedural problems.

To appreciate the nature of defendant's application, it is necessary to review the situation as it stood when defendant, with the advice of counsel, sought and obtained acceptance of his plea of *non vult*.

At about 2 A. M. on September 21, 1945, defendant and his victim were patrons at the Friendly Diner in Bayonne. Defendant offended a waitress, and upon her protest addressed her in profane terms. Decedent said to defendant, "You got a dirty tongue, keep quiet." An altercation ensued in which defendant fared poorly. Police officers were summoned, and when the owner of the diner declined to make a charge, defendant was permitted to leave. He entered his car, drove to his home some three miles away, loaded a 25-automatic gun, and returned to the diner about 15 minutes after he had left. According to the State,

decedent was seated at the counter, and as he turned, defendant fired a shot with effect, and as decedent sought to reach him, fired five additional shots, all of which struck the victim.

The police were still near by. Defendant was immediately taken into custody. At 3:05 A. M. he signed a statement. According to the police report transmitted to the prosecutor, defendant was examined at 4:50 A. M. by Dr. Louis Norwich and found to be sober, and in the words of the report, "As a precautionary measure we took a supplementary statement from Magonia in which he reiterated all he had stated in his first statement." At about 10:30 A. M. defendant reenacted the crime at the diner.

■ Defendant did not seek to reinstate his plea of not guilty under *R. R.* 3:7–10(*a*), with the consequent risk of a death sentence. We do not suggest that his showing would in any wise support such an application. *State v. Cynkowski,* 10 *N. J.* 571 (1952); *State v. Pometti,* 12 *N. J.* 446 (1953); *Application of Faas,* 42 *N. J. Super.* 31 (*App. Div.* 1956). Rather, we refer to what he did not seek in order to point up the unique relief he wanted. He sought a determination that he was in fact guilty only of murder in the second degree, and a new sentence accordingly, subject to the maximum of 30 years provided in *N. J. S.* 2*A*:113–4. One charged with murder is not entitled to a trial of that kind before or after a plea. Nor does the statute contemplate a hearing as to the degree of guilt to determine the sentence to be imposed upon the plea of *non vult.* Defendant was entitled to a trial only on a plea of not guilty to the charge of murder at the risk of the extreme penalty, a course which he wisely avoided in 1946 and did not seek even in the year 1956. Hence defendant's application for a trial of the issue of the degree of his actual guilt was properly denied.

Since the moving papers were self-prepared, and notwithstanding that defendant had the benefit of counsel below and before us, we will consider an alternate prayer which perhaps reposes in his papers, *to wit,* that the sentence be reconsidered in the light of the new factual matters he

advances. In asserting his guilt of murder in the second degree only he stated:

"Where the question is merely one of specific intent to take life, intoxication may be so pronounced as to negative a mental ability to form such an intent, and the homicide will be murder in the 2nd degree"

and cited *State v. Mangano,* 77 *N. J. L.* 544 (*E. & A.* 1909), and *State v. Mack,* 86 *N. J. L.* 233 (*E. & A.* 1914). See also *State v. Tune,* 17 *N. J.* 100, 115 (1954). He proffered two factual matters in support of his motion. The first is an affidavit purportedly signed by Dr. Norwich, the same physician who according to the police report had found defendant sober some 2½ hours after the shooting. In the affidavit, Dr. Norwich says:

"On September 21, 1945, Anthony Magonia of Bayonne, N. J., shot and killed a man at the Friendly Diner in Bayonne, N. J. Within an hour of the shooting I examined Anthony Magonia and found him to be under the influence of intoxicating liquor to such an extent that at the time of the shooting he could not possibly have understood the nature of the act that he committed. His condition was such that I advised the police that Mr. Magonia could not make a coherent statement at the time of my examination."

This affidavit is dated July 7, 1953, almost eight years after the event, about two years before the first motion and three years before the present application. No explanation is offered with respect to defendant's delay in proceeding upon it.

The remaining offer is to prove that on June 2, 1954 the Hudson County Probation Department wrote to defendant that a review of the records of that office reveals "nothing therein to indicate that you were under the influence of liquor at the time of your offense," from which defendant would erroneously infer that the trial court was unaware of his claim of intoxication.

It should be noted that there is no suggestion of a fraudulent withholding or suppression of evidence by the prosecutor. It is not alleged the prosecutor knew that Dr.

Norwich held any view other than that stated in the police report. Hence we need not consider the scope of a prosecutor's duty of disclosure with respect to the matter of sentence upon a plea of *non vult* to murder. See *United States ex rel. Almeida v. Baldi,* 195 *F. 2d* 815, 33 *A. L. R. 2d* 1407 (3 *Cir.* 1952), *certiorari denied* 345 *U. S.* 904, 73 *S. Ct.* 639, 97 *L. Ed.* 1341 (1953).

It is perfectly clear that defendant's claim of intoxication was fully disclosed to the sentencing judge, and indeed that the prosecutor agreed to and the court accepted the plea of *non vult* for that reason. Except for the possibility that a jury might have found defendant's intoxication was of sufficient degree to negate an intent to kill, no basis for the acceptance of that plea can be discerned. We note parenthetically that in his earlier "Motion to Introduce New Evidence" defendant annexed a transcript of the proceedings on sentence and himself said, "Albeit the introduction of the influence of intoxicating liquors was presented by defense counsel in his address to the court, and could not be presumed 'as evidence,' the Prosecutor's remarks tended to support the statement that there had been drinking just prior to the crime."

At the time of sentence defendant's counsel detailed the round of drinking which defendant had pursued prior to the shooting episode. Said his attorney, "At this time the defendant was drunk. I don't believe there was any question about it, I believe all the witnesses in the case will verify that." The prosecutor did not challenge that statement, but rather expressed the view, consistent with a state of intoxication, that "this was a deliberate and premeditated murder."

If the Norwich affidavit be given the most favorable interpretation for defendant despite its obvious gaps and lack of detail, the facts nonetheless strongly indicate that defendant was not intoxicated to the point of prostration of his faculties. He drove to his home. He loaded his gun and returned, all within 15 minutes. He fired six shots, and none missed their target. He signed a statement within an

hour, in which he recorded the details of the homicide, the time and place where he had purchased the gun and the price paid, and the palliatory claim, "I shot low, I didn't intend to kill him." He reenacted the crime the same morning. Defendant does not challenge any of these matters. In fact, even now he nowhere asserts that he did not know what he was doing. In these circumstances, Dr. Norwich's testimony, if it accorded with his affidavit, could not have influenced the sentence. And, it may be added, there is nothing to indicate that defendant could not have discovered this evidence prior to sentence by an exercise of reasonable diligence. Indeed, he does not reveal when he first learned of it.

The sentence imposed was a lawful one; it accorded with the statute. The time for reconsideration by the trial court expired long ago (*R. R.* 3:7–13 presently prescribes a 60-day limitation). There is nothing to suggest a denial of due process within the ambit of *Townsend v. Burke,* 334 *U. S.* 736, 68 *S. Ct.* 1252, 92 *L. Ed.* 1690 (1948). We need not now speculate whether anything short of infringement of that constitutional guarantee could warrant an attack upon the *quantum* of a sentence. It is not enough merely to advance some additional matter which might or might not have persuaded the trial judge to impose a lesser penalty.

The order is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and FRANCIS—7.

*For reversal*—None.