**UNITED STATES ex rel. Albert H. WALLS**

v.

**Alfred T. RUNDLE, Superintendent, State Correctional Institution, Philadelphia, Pennsylvania,**
now
**David N. Myers, Superintendent, State Correctional Institution, Graterford, Pennsylvania, Substitute Respondent.**

**Misc. No. 2715.**

United States District Court
E. D. Pennsylvania.

April 14, 1965.

Albert H. Walls, in pro. per.

BODY, District Judge.

Albert H. Walls filed a petition in this Court and contends that his constitutional rights have been violated. He raises these issues:

1. That he was denied the assistance of counsel at Juvenile Court;

2. That he was denied the assistance of counsel during the interrogatories by police;

3. What is the effect of his plea of of guilty to murder generally and his subsequent testimony at the trial?

Relator raised substantially the same issues in the Court of Common Pleas of Philadelphia County (C.P. No. 6, June 1963, No. 5537) in his petition for a writ of habeas corpus which was denied by that court. On appeal to the Supreme Court of Pennsylvania (414 Pa. 53, 198 A.2d 528) the lower court's dismissal was affirmed.

A hearing was held before me on the petition, and the testimony of the relator and his mother was taken. On the part of the respondent, three police officers were called and testified.

From the entire record it appears:

"* * * that on August 10, 1951, relator went to the home of a friend, one William Sampson, where he met both Sampson and a Marshall Miller. Relator asked them to go with him to commit a robbery. The three of them entered a taxicab, with relator sitting in the front seat and the other two in the rear seat. Relator shot the driver who later died. The three fled and relator was traced through the revolver while attempting to dispose of it." [1]

██ Walls was arrested about 11:00 p. m. on October 15, 1951 and signed a confession at 7:20 on October 16, 1951. He was then sixteen years of age (born October 2, 1935). Thereafter on October 15 or 16, 1951 he had a hearing in Juvenile Court before Judge Kelley with no counsel present, when the case was certified to the criminal courts. Since this is not a criminal proceeding, no counsel was required. Holmes' Appeal, 379 Pa. 599, 109 A.2d 523; cert. den. 348 U.S. 973, 75 S.Ct. 535, 99 L.Ed. 757.

At the Coroner's inquest he was represented by counsel. At arraignment court he was not represented by counsel and he entered a plea of not guilty.

His plea of guilty, on the advice of counsel, was entered on June 10, 1952, about eight months later.

"* * * During the course of the hearing on the plea, the trial judge, on two occasions, asked counsel whether he was raising any question relative to the voluntary nature of appellant's confession. Counsel replied, 'No' on both occasions. Consideration of the time which elapsed between the taking of the confession and the entering of the plea together with the positive assertions by counsel that no question was raised on this issue clearly justified the hearing court's conclusion that the plea was not coerced. See United States v. Morin, 265 F.2d 241, 245–246 (3rd Cir. 1959).

"Moreover, of even greater significance is the fact that appellant, on the advice of counsel, testified at the time the plea was entered and gave an account of the offense in far greater detail than appeared in the statement which he signed. Cf. Com. ex rel. Miller v. Myers, 187 Pa. Super.Ct. 565, 146 A.2d 145 (1958). He related that, on October 10, 1951, in the company of William Sampson and Marshall Miller, while carrying a loaded revolver, he hailed a taxi for the express purpose of robbing the driver. He took the gun from his pocket and directed the driver to pull his cab over, at which point, even taking the testimony in a light most favorable to appellant, the driver hit his brakes and the gun ac-

1. From opinion of Court of Common Pleas.

cidentally went off. The bullet struck the driver in the side and penetrated his chest. He died a few hours later.

"In sentencing appellant, the court below observed, 'His youth is the only thing that moved this Court against the supreme penalty. This crime was inexcusable, wilful, and it took out of our community a young citizen in the prime of his life. If it were not for his age the sentence which we are about to pronounce would be much more sever[e].' In doing so, the sentencing court afforded appellant every benefit and advantage that could reasonably be expected from the sole mitigating circumstance. * * *" [2]

On November 21, 1952 he was adjudged guilty of murder in the first degree, and the sentence of life imprisonment was imposed. No appeal was taken from this judgment of sentence.

During this same evening of October 15, 1951 there were at least ten to twelve boys in the police station, as well as parents of many of the boys. They were sitting in the outer room, and two of these were Mr. and Mrs. Walls, parents of the relator. The father is now deceased.

Mrs. Walls testified that after their arrival at the police station, they phoned Mr. Levinson, an attorney, and that he refused to come to the police station. The relator testified before me that he asked for counsel, namely, Mr. Levinson. So it is certain that the police permitted and knew of the call to Mr. Levinson, and that this was during the investigating proceedings which concerned not only the relator but all of the ten to twelve boys who were suspects.

Two of the police officers testified that at no time did Walls request that he be given counsel, and I find this as a fact. Further, it was testified that Walls was advised by said officers of his rights not to sign a confession and that there were no threats.

It is certainly beyond my imagination that in a small police station crowded with people, with one person after another being interrogated by two or three policemen, not continuously for hours, as alleged, for it takes time to talk to ten or twelve boys, that the interrogation was continuous and that relator was put in fear, but I am sure that the propelling reason for his admission was the knowledge of the signed statements by Sampson and Miller. The police were so busy with each boy, one after another, ten to twelve of them, that surely no one could have prevented a parent or parents from calling and procuring counsel.

It is to be noted that relator at that time, at the age of sixteen years, was a huge boy, weighed 202 pounds, and was in the National Guard. Further, we should point out that counsel at the time of trial before the court en banc did not raise any questions relative to the voluntary nature of appellant's confession.

So I find, in view of all the circumstances, that Walls was given the right to have counsel but, for whatever reason, the attorney called on the phone by relator's parents did not choose to come to the police station.

The police were carrying out an investigation which began with the finding of a 25 caliber revolver. Ten to twelve subjects were rounded up and taken to the police station late in the evening. The process of elimination began. The parents were summoned or came voluntarily. Apparently William Sampson and Marshall Miller implicated Walls. To me, this is routine and excellent police work and nowhere do I find a denial of relator's constitutional rights by having the police refuse to honor his request to consult with his or an attorney during the course of the interrogation. Gideon v. Wainwright, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799. There was no request for an attorney, except for Mr. Levinson, who was called from the police station.

To be ruled by the case of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12

2. Commonwealth ex rel. Walls v. Rundle, 414 Pa. 53–57, 198 A.2d 528.

**14**

L.Ed.2d 977, the suspect in police custody must be denied the right to consult with counsel, and must be denied the assistance of counsel. I find no such denial for relator. The facts in Escobedo show that Escobedo repeated his requests for counsel, that he had a lawyer, but that client and lawyer were afforded no opportunity to consult before his statement was taken. Further, during that trial the lawyer moved to suppress the incriminating statement of the defendant (Escobedo) but the motions were denied. In the instant case, in further contrast, counsel at no time during the trial raised the question as to the confession.

In still further contrast to the instant case, it is to be noted that at the time of trial the relator testified in far greater detail than appeared in the statement which he had signed. This he did on the advice of counsel. It was not necessary for counsel for the Commonwealth to use the confession of the relator because the plea of guilty in open court dispensed with the proof of the crime. Townsend v. Burke, 334 U.S. 736, 68 S. Ct. 1252, 92 L.Ed. 1690. There is no allegation in petition, or testimony of relator, that the confession induced his plea.

Accordingly, the conclusion is reached that counsel for the relator evaluated the trial tactical situation of his client charged with murder. He chose not to contest the confession. The client plead guilty to murder with the hope of leniency in the heart of the court. I think it fair and reasonable to assume that counsel balanced his youth, his prior good record, and that he was in the National Guard and privileged to wear the uniform of his country during the Asiatic crisis, against the facts of killing during an attempt to commit a felony. To show that nothing was to be hidden from the court, Walls testified in detail. Counsel wanted to move the court against imposing the supreme penalty. Walls was successful for the penalty was fixed at life imprisonment.

In view of the above, the writ of habeas corpus is denied.

