■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUAN ORENGO, Appellant. [728 NYS2d 775] —Appeal by the defendant, by permission, from an order of the Supreme Court, Kings County (Gerges, J.), entered June 18, 1998, which denied his motion pursuant to CPL 440.20 to vacate a sentence imposing an indeterminate term of imprisonment of 20 years to life, upon a judgment of the same court, rendered January 6, 1992, convicting him of murder in the second degree, upon a jury verdict.

Ordered that the order is affirmed.

At the time of sentencing, the People alleged that the defendant had a number of previous convictions. However, defense counsel asserted that the defendant had no previous convictions. The defendant himself told the court, "That's not my record. That's my cousin. He got the same name as me. That's not me."

On appeal, the People concede that the convictions which the prosecutor attributed to the defendant at sentencing were, in fact, not his. Thus, the defendant argues that his sentence should be vacated because it was based upon incorrect data. We disagree.

Prior to imposing sentence, the Supreme Court stated as fol-

lows: "[A]fter due deliberation, and having read the probation report, after listening to the Assistant District Attorney, considering the nature of the crime, and the defendant's prior record, and I've taken into consideration that this may not be his record, all right, *I'm going to base it upon, this sentence, based upon the crime that was charged, and the verdict of the jury on this case,* the court gives the following judgments of sentence. * * * I recall this case very vividly * * * [T]his is not a case of an intoxicated person, who, by mistake, shoots somebody. This is a case where someone intentionally goes after another person. And, even after going after the person, the person walks back out; and then he goes after him a second time" (emphasis added).

Contrary to the opinion expressed by our dissenting colleagues, the Supreme Court's remarks demonstrate that the sentence which it chose to impose was based solely upon the crime and its circumstances, and not upon the incorrect information concerning the defendant's prior criminal record. Indeed, the Supreme Court specifically stated that the sentence was based upon the crime charged and the verdict of the jury.

Even assuming that the Supreme Court's remarks may be deemed ambiguous concerning the import of defendant's "prior record," any ambiguity was dispelled when the court denied his subsequent motion pursuant to CPL 440.20, and reiterated that it had *"disregarded the District Attorney's comments* [at sentencing]," and that *"the sentence was based on the facts of the crime before the court and not on any prior alleged criminal history"* (emphasis added).

Although the defendant's attorney could have been more vigilant in exploring the issue of the defendant's record, his conduct in this regard was not tantamount to ineffective assistance of counsel (*see, People v Rivera,* 71 NY2d 705). In any event, as already noted, the inaccurate record was disregarded by the Supreme Court.

Therefore, the Supreme Court properly denied the defendant's motion to vacate his sentence (*cf., People v Naranjo,* 89 NY2d 1047). Santucci, J. P., H. Miller and Schmidt, JJ., concur.

S. Miller, J., dissents and votes to reverse the order appealed from, grant the motion, vacate the sentence, and remit the matter to the Supreme Court, Kings County, with the following memorandum, in which Friedmann, J., concurs: I do not agree with the conclusion reached by my colleagues in the majority that the record demonstrates the propriety of the defendant's sentencing. I therefore dissent.

The defendant's conviction stemmed from an incident during

which he fatally shot an acquaintance in a Brooklyn grocery store. The defendant, who was apparently drunk, became embroiled in a verbal altercation with one Leopollo Mosica outside the store. It appears that the defendant's cousin Jose Santiago produced both a gun and a motive, the latter of which he whispered in the defendant's ear, causing him to become instantly enraged. The defendant then chased Mosica into a bathroom in the grocery store and fired two shots through the closed door, fatally hitting Mosica in the head.

Jose Santiago, who apparently instigated this shooting and had a long record, was convicted of criminal possession of a weapon in the second degree, and was sentenced to 15 years to life as a persistent violent felony offender. His conviction was affirmed (see, People v Santiago, 199 AD2d 290).

The defendant was convicted of murder in the second degree (depraved indifference murder) upon a jury verdict. Insofar as relevant to this appeal, the following information was before the court at the time of sentencing.

The probation report unambiguously stated that the defendant had no prior record as a juvenile or an adult. However, at sentencing the prosecutor offered additional information. Contrary to the representation in the probation report, the prosecutor stated that the defendant "does have prior arrests."

Specifically, the prosecutor told the court that (1) the defendant had been arrested for marihuana possession in 1979. In 1980, the prosecutor charged, (2) the defendant had been arrested on a charge of criminal possession of a weapon in the fourth degree, and pleaded guilty to disorderly conduct and was fined. Also in 1980, she averred, (3) the defendant was arrested for disorderly conduct and resisting arrest, pleaded guilty to disorderly conduct, and was sentenced to time served. In 1981, the prosecutor stated, (4) the defendant was arrested for criminal possession of a controlled substance as a class A misdemeanor, and was fined. He was also arrested in 1981, she charged, (5) for marihuana possession and again pleaded guilty in exchange for a fine. In 1982, according to the prosecutor, (6) he was charged with criminal sale of marihuana with no reported disposition. Finally, the prosecutor represented that at an undisclosed time in the past, (7) the defendant was arrested with Santiago, and was found to be in possession of a sawed-off shotgun. Santiago pleaded guilty and the case against the defendant was dismissed. Nevertheless, based upon "the defendant's past history," as well as the circumstances of this case, the prosecutor urged the court to impose a maximum sentence of 25 years to life.

Defense counsel responded by criticizing the prosecutor for "go[ing] into the defendant's background" and: "quoting marihuana possession convictions of offenses that happened over twelve years ago. A disorderly conduct conviction that happened eleven years ago. Possession of a sawed-off shotgun, your Honor, where the District Attorney's office chose to move to dismiss all of the charges." Defense counsel thus protested that the prosecutor was besmirching the defendant's reputation with innuendo based upon violations that were ancient history. Additionally, and apparently without recognizing the inherent inconsistency, counsel argued: "The defendant has not been convicted of a crime. This is his first offense, your Honor." Counsel then blamed alcohol and the bad influence of Santiago to argue that the defendant should be sentenced to a minimum term of 15 years to life.

The court then asked the defendant if he had anything to add, whereupon the following transpired:

"THE DEFENDANT: That's not my record. That's my cousin. He got the same name as me. That's not me.

"THE COURT: Anything else, sir?

"THE DEFENDANT: This is my first time.

"THE COURT: Anything else?

"[DEFENSE COUNSEL]: Nothing else, your Honor."

Immediately after this exchange, the court pronounced sentence, stating: "[A]fter due deliberation, and having read the probation report, after listening to the Assistant District Attorney, *considering* the nature of the crime, and *the defendant's prior record, and I've taken into consideration that this may not be his record,* all right, I'm going to base it upon, this sentence, based upon the crime that was charged, and the verdict of the jury on this case, the court gives the following judgments of sentence" (emphasis supplied). The court then recalled some of the details of the trial, and agreed with the jury's rejection of the defendant's proffered intoxication defense. The court opined that this was an intentional, cold-blooded shooting, and then imposed a sentence of 20 years to life.

On appeal, the defendant, *inter alia*, challenged his sentence as excessive; he did not explicitly raise his present claims. Analyzing the issue purely as one of excessiveness, and treating this as a first conviction, this Court declined to disturb the sentence imposed (*see, People v Orenzo,* 202 AD2d 693).

By notice of motion dated November 24, 1997, the defendant moved *pro se,* pursuant to CPL 440.20, to vacate his sentence

based upon (1) the prosecutor's proffer, and the court's alleged consideration, of the inaccurate information at sentencing, and (2) defense counsel's alleged lack of preparedness in failing to correct the error. The defendant argued that after the Division of Criminal Justice Services refused his requests to correct the incorrect information from his NYSID file, he corresponded with the Federal Bureau of Investigation, which upon a fingerprint analysis accurately concluded that he had no other criminal convictions. The defendant characterized the prosecutor as "vindictive" for knowingly proffering false information, and trial counsel as ineffective for not rebutting the prosecutor's proffer. Indeed, the defendant contended, defense counsel implicitly conceded the accuracy of the information by trying to downplay its significance. Arguing that he had the right to be sentenced based upon accurate information, the defendant asked that his sentence be vacated, and that he be resentenced.

The People opposed the motion on three grounds. First, while they conceded that the prosecutor may have proffered factually-incorrect information concerning the defendant's prior criminal record, the People categorically denied that the prosecutor knowingly acted in an improper way. Secondly, the People argued that defense counsel vigorously contested the prosecutor's allegations, and thus was not ineffective. Finally, the People argued that the court stated at sentencing that the imposition of a sentence of 20 years to life was based upon the brutal and senseless nature of the violent murder perpetrated by the defendant, and not upon the prosecutor's misrepresentations. Thus, the People urged the court to deny the defendant's motion.

By order entered June 18, 1998, the court denied the motion, holding in pertinent part: "Defendant claims that counsel was ineffective because of his representation at sentencing. Defendant's claims are belied by the record. Counsel vigorously advocated on defendant's behalf and, indeed, the Court disregarded the District Attorney's comments. The Court clearly stated on page 8 of the sentencing minutes of January 6, 1992 that the sentence was based on the facts of the crime before the Court and not on any prior alleged criminal history. Defendant received effective assistance of counsel. Defendant's motion to set aside the sentence is hereby denied."

By decision and order dated December 30, 1998, I granted the defendant's motion for leave to appeal. I would reverse the order, grant the motion, vacate the sentence, and remit for resentencing.

The defendant argues, and the People concede, that as a

matter of due process, a defendant is entitled to be sentenced upon accurate information. Where the parties differ, however, is whether that rule was violated in this case. While assigned appellate counsel has prudently abandoned the defendant's *pro se* rhetoric charging the prosecutor with intentional acts of misrepresentation, counsel now accurately characterizes the misdeed as one of apathy; no one, including the defendant's assigned trial counsel, "bothered to check" the accuracy of the information. I agree. It is clear that the defendant's sentencing procedure was infected by impropriety. While it might well not have made a difference, the defendant should nevertheless be resentenced.

The People do not dispute the correctness of the defendant's legal arguments in the abstract. "Generally, as a matter of due process, an offender may not be sentenced on the basis of ' "materially untrue" assumptions or "misinformation" ' (*United States v Pugliese,* 805 F2d 1117, 1123, quoting *Townsend v Burke,* 334 US 736, 741). Rather, '[t]o comply with due process * * * the sentencing court must assure itself that the information upon which it bases the sentence is reliable and accurate' (*People v Outley,* 80 NY2d 702, 712)." (*People v Naranjo,* 89 NY2d 1047, 1049; *see, United States v Malcolm,* 432 F2d 809.) Thus, where a court imposes a sentence which, for example, purports to punish a defendant for crimes of which he was acquitted, the appropriate disposition is to vacate the sentence and remit the matter for resentencing before a different Judge (*see, People v Santiago,* 277 AD2d 258; *People v Grant,* 191 AD2d 297; *People v Coward,* 100 AD2d 628).

*People v Naranjo* (89 NY2d 1047, *supra*) is factually analogous to this matter. There, the defendant was convicted, *inter alia,* of robbery, based upon a gunpoint holdup of a deli. At sentencing, the prosecutor recounted that just days before the defendant's trial was to begin, a masked male, possibly the defendant's unapprehended accomplice, walked into the deli late at night and shot and killed an employee. The prosecutor disavowed any explicit knowledge, but implied that the defendant might have been behind that shooting as a means of intimidating the witnesses who would shortly be testifying against him. In imposing sentence, the Trial Judge stated that he was "definitely considering the shooting incident" (*People v Naranjo, supra,* at 1049). The Court of Appeals vacated the sentence, however, holding that it was improperly based upon pure speculation.

Similarly, in *People v Menasche* (224 AD2d 551), the defendant was convicted of robbery. He had apparently been acquit-

ted previously on similar robbery charges. The sentencing court, however, effectively negated that prior acquittal in determining that the defendant had established a "pattern of violent behavior." This Court held that to be error, vacated the sentence, and remitted the matter for resentencing before a different Judge.

The foregoing cases clearly demonstrate that *if* the court sentenced the defendant based upon the inaccurate information proffered by the prosecutor, the sentence must be vacated and the matter remitted for resentencing before a different Judge. The People, however, argue that as a factual matter, the court did not consider the inaccurate information. In my opinion, the record belies the People's claims.

In imposing sentence, the court made several, factually irreconcilable statements after the prosecutor adduced the incorrect information. First, the court stated that it had read the probation report which represented that this was the defendant's first conviction. However, the court also expressly acknowledged that it had "listen[ed] to the Assistant District Attorney, considering the nature of the crime, *and the defendant's prior record*" (emphasis added). However, the court immediately attempted to disclaim the import of that new information by backpedalling: "I've taken into consideration *that this may not be his record*" (emphasis added). Finally the court stated: "I'm going to base * * * this sentence * * * upon the crime that was charged, and the verdict of the jury on this case," whereupon the court indeed recited several pertinent facts of this case.

From the foregoing, it is not clear what the court did or did not consider. To the extent that the court was aware that the prosecutor's information was in doubt, the court should not have considered it at all. It was wrong for the court to say, in effect, "I'm considering the defendant's many past convictions although I acknowledge that they may not be his." Yet that is exactly what the court did.

This case resembles *People v Outley* (80 NY2d 702), and its progeny concerning the release of a defendant after a guilty plea, subject to a condition that he not get arrested prior to sentencing. When a court seeks to impose an enhanced sentence due to the violation of the no-arrest condition, but the defendant denies complicity in the crime charged, to satisfy due process the court: "must conduct an inquiry at which the defendant has an opportunity to show that the arrest is without foundation * * * The nature and extent of the inquiry— whether through a summary hearing pursuant to CPL 400.10

or some other fair means—is within the court's discretion * * * The inquiry must be of sufficient depth, however, so that the court can be satisfied * * * of the existence of a legitimate basis for the [new] arrest." (*People v Outley, supra,* at 713; *see, People v McClemore,* 276 AD2d 32.) It seems fundamental that a similar inquiry should be conducted where the prosecutor alleges that a sentencing determination should take into consideration past convictions that are not recited in the probation report and are credibly disputed by the defendant. Indeed, a very minimal inquiry of the defendant conducted on the record might have cleared up this obvious incongruity, yet the court blithely dismissed it; "Anything else?"

Here, the People opposed the defendant's motion, *inter alia,* by pointing to the court's statement that it was basing the sentence on the circumstances of this case. Unfortunately, the Judge also uttered inconsistent statements that he was considering the prosecutor's representations of the defendant's record. On appeal, the People argue, and the majority agrees, that since the court itself denied the motion to vacate by concluding that it "disregarded the District Attorney's comments," then this Court should accept that conclusion as true. However, in light of the court's contemporaneous admitted consideration of "the defendant's prior record, [although] I've taken into consideration that this may not be his record," I find it untenable to defer to the sentencing Judge, in effect permitting him to sit as his own appellate court. Rather, to ensure that the defendant received due process, some inquiry was required.

This is especially so in this case because it is clear that the defendant's appointed trial counsel was not prepared to refute the prosecutor's allegations. The defendant's appellate counsel argues that "no one bothered to check" the accuracy of the information. This characterization is on the mark. Certainly, trial counsel could not fairly be faulted for being unprepared to respond to the new charges raised by the prosecutor; this was a total surprise to everyone. However, trial counsel absolutely should have protested the ambush tactic employed by his adversary, and at a minimum, he should have requested an adjournment or some sort of judicial inquiry to delve into the matter. He did neither. Counsel merely engaged in an uninspired argument ostensibly designed to blunt the effect of the new information, disparaging the charges as minor and ancient history rather than unfounded, and then, without any elaboration, added that this was the defendant's first conviction. Counsel's failure to appreciate the irreconcilable illogic of his own argument is telling.

The record strongly suggests that the sentencing court was concerned with moving this case through the sentencing phase, and that trial counsel inexcusably failed to raise a legitimate issue. Inasmuch as the court may have relied to some degree on the incorrect information, and as trial counsel failed to do his job, I conclude that the defendant was denied the due process to which he was entitled.

With that said, the sentence of 20 years to life was fully warranted for this crime; indeed, this Court found it not to have been excessive. The defendant executed his victim in cold blood, albeit through a closed door. A sentence of 20 years to life was within the permissible range and would have been a provident exercise of discretion, even for a first conviction. However, while vacatur and resentencing may be nothing more than an academic exercise, due process requires such relief under the circumstances of this case.

For the foregoing reasons, the order denying the defendant's motion pursuant to CPL 440.20 should be reversed, the motion granted, the sentence vacated, and the matter remitted to a different Justice of the Supreme Court, Kings County, for resentencing.