**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-10348

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

FRANK D. CAVANAUGH,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:23-cr-00065-RBD-KCD-1

————————————

Before JORDAN, KIDD, and ANDERSON, Circuit Judges.

PER CURIAM:

On May 21, 2023, Frank Cavanaugh mailed letters to two judges demanding that they grant his motions for release from state prison and that they place money into cash apps for him. If

they refused, he would order them shot outside their homes by his fellow gang members from the Gangster Disciples. To add to the threats, he promised that their homes would be burned down and that their families would be in danger. Four days later, Mr. Cavanaugh was interviewed by federal agents about the letters. He confessed immediately and even admitted to writing two more, which were sent to two other judges. In September of 2023, a grand jury indicted Mr. Cavanaugh on two counts of delivering a threatening communication in violation of 18 U.S.C. § 876(c).

Mr. Cavanaugh pled guilty and was sentenced on May 6, 2024. He was then re-sentenced again on March 5, 2025.[1]

During both sentencings, the district court was made aware of Mr. Cavanaugh's long history with the criminal justice system for violent offenses as well as his traumatic upbringing and battles with mental health. The court noted that

> [i]t's hard to describe an upbringing that's been maybe more detrimental to the development of a . . . properly functioning individual, somebody capable of following societal norms and refraining from committing criminal acts. And it's certainly true that the mitigating factors contained in the [p]resentence [investigation] [r]eport are remarkable, to say the least.

D.E. 90 at 24. The court, however, ultimately concluded that Mr. Cavanaugh's criminal history was "grossly underrepresented" by

---

[1] Due to an error in the calculation of the Sentencing Guidelines, Mr. Cavanaugh's original sentence was vacated.

the guidelines calculation; his presentence investigation report was "replete with incidents of violent criminal behavior." *Id.* at 22. Despite defense counsel asking for either a sentence within the guidelines range of 46-57 months or a 60-month sentence, the court varied upward and sentenced Mr. Cavanaugh to 72 months' imprisonment.

## I

Mr. Cavanaugh now appeals his sentence as substantively unreasonable. He raises two arguments on appeal.

First, Mr. Cavanaugh contends that the district court erred in relying on its belief that imprisonment deters crime. *See* Appellant's Brief at 13-14. For support, Mr. Cavanaugh points us to these remarks from the district court during his sentencing:

> The thing that troubles me the most, Mr. Cavanaugh, in trying to fashion an appropriate sentence is the question of general and specific deterrence . . . But I do know that an incarcerative sentence does have, despite, I think, some literature to the contrary, I believe that it does have both specific and general deterrent effect.

D.E. 90 at 24-25.

Second, Mr. Cavanaugh asserts that the district court failed to give adequate weight to evidence of mitigation. *See* Appellant's Brief at 16. For that, he points us to his traumatic upbringing, the difficult experiences he faced while incarcerated, and his mental health struggles.

Following a review of the record and the parties' briefs, we affirm Mr. Cavanaugh's sentence.

## II

We review the reasonableness of a sentence under abuse of discretion standard. *See Gall v. United States*, 552 U.S. 38, 41 (2007). The party challenging the sentence bears the burden of showing that it is unreasonable in light of the record and factors set forth in 18 U.S.C. § 3553(a). *See United States v. Tome*, 611 F.3d 1371 (11th Cir. 2010).

## III

At sentencing, district courts are required to consider the advisory guidelines range and the § 3553(a) factors. *See United States v. Rosales-Bruno*, 789 F.3d 1249, 1253–54 (11th Cir. 2015). "The district court's task is to impose a sentence that will adequately (1) 'reflect the seriousness of the offense,' (2) 'promote respect for the law,' (3) 'provide just punishment,' (4) 'afford adequate deterrence,' (5) 'protect the public from further crimes of the defendant,' and (6) provide the defendant with any needed training and treatment in the most effective manner." *Id.* (quoting 18 U.S.C. § 3553(a)(2)). The court must also consider the nature and circumstances of the offense, the defendant's history and characteristics, the kinds of sentences available, the applicable guidelines range, any pertinent policy statements, and the need to avoid sentencing disparities between similarly-situated defendants. *See* § 3553(a)(1), (3)–(7). The court is not required to give all of the § 3553(a) factors

equal weight and may give one factor significant weight over another. *See Rosales-Bruno*, 789 F.3d at 1254.

"A district court abuses its discretion [in sentencing] when it (1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006) (en banc). But because district courts have certain institutional advantages in applying and weighing the § 3553(a) factors, reversal is warranted only if the appellate court is left with the definite and firm conviction that the district court arrived at an unreasonable sentence. *See United States v. Pugh*, 515 F.3d 1179, 1190–91 (11th Cir. 2008).

## II

Mr. Cavanaugh's sentence was substantively reasonable. Under the § 3553(a) factors, the court is required to consider deterrence—both general and specific. *See* § 3553(a)(2)(B)(C). And we have said in other contexts that deterrence is furthered by terms of imprisonment. *See, e.g., United States v. Irey*, 612 F.3d 1160, 1210-11 (11th Cir. 2010) (en banc) (explaining that Congress, the Sentencing Commission, the Supreme Court, this Court, and other courts have recognized the importance of deterrence in child exploitation cases). And recidivists receiving longer sentences is "hardly a new discovery." *Ovalles v. United States*, 905 F.3d 1231, 1255 (11th Cir. 2018) (Pryor, C.J., concurring), *abrogated by United States v. Davis*, 588 U.S. 445 (2019).

That Mr. Cavanaugh can point to certain select empirical studies that disagree with prison as an effective deterrent to crime does not necessarily establish that the district court abused its discretion. For example, some courts and studies have noted that "severity of punishment continues to have some deterrent effect—albeit less than it would were the universe of potential criminals an overall rational bunch." *United States v. Courtney*, 76 F. Supp. 3d 1267, 1306 n.13 (D.N.M. 2014) (citing Daniel S. Nagin, *Deterrence: A Review of the Evidence by a Criminologist for Economists*, 2013 Annual Rev. Econ. 5:83, 86-88, 97-98 (2013)). As a result, we cannot say that the district court relied on an incorrect factual basis in fashioning its sentence.

Courts are allowed, and indeed expected, to rely on their experience and judgment in imposing a sentence. Empirical studies do not supplant that discretionary judgment: "There is no requirement that sentencing judges confine their considerations to empirical studies and ignore what they have learned from similar cases over the years." *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009). A single empirical study, or even several such studies, may be relevant, but they do not completely override a sentencing court's experience. *See id.* at 1239.

Furthermore, the cases that Mr. Cavanaugh cites are inapposite. Mr. Cavanaugh cites to *Townsend v. Burke*, 334 U.S. 736 (1948) and *United States v. Tobias*, 662 F.2d 381 (5th Cir. 1981). Both cases stand for the proposition that sentences based upon erroneous and material information or assumptions violate due process.

But in *Townsend* and *Tobias*, the sentencing court had relied on facts that were not supported in the record. In *Townsend*, the sentencing court had incorrectly assumed that certain charges that appeared on the defendant's criminal history had resulted in convictions when they had not. This incorrect assumption led the Supreme Court to reverse the sentence out of concern that materially untrue facts had influenced the sentencing court. *See* 334 U.S. at 741. And in *Tobias*, there was no evidence in the record that the defendant had knowingly and intentionally obtained enough chemicals to manufacture a certain quantity of drugs despite the court relying on this fact at sentencing. *See* 662 F.2d at 388. There was no such factual error here.

We are also not persuaded by Mr. Cavanaugh's assertion that the district court erred by not giving enough weight to his evidence of mitigation. As noted, at sentencing the court specifically discussed Mr. Cavanaugh's difficult upbringing and struggles with mental health. The court even went as far as to call them "remarkable." D.E. 90 at 24. But it was squarely within the court's discretion to determine how to weigh the mitigating and aggravating factors. *See United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007). The court weighed Mr. Cavanaugh's long history of violent offenses against the mitigating evidence. In the end, the court was more moved by the former than the latter. On this record, that was its decision to make.

## IV

We affirm Mr. Cavanaugh's sentence.

**AFFIRMED.**