Paul Gordon ELLIOTT, Petitioner,

v.

UNITED STATES of America, Respondent.

No. C–76–2322 WHO.

United States District Court, N. D. California.

May 5, 1977.

Barry L. Morris, Oakland, Cal., for petitioner.

James L. Browning, Jr., U. S. Atty., Eb F. Luckel, Jr., Asst. U. S. Atty., San Francisco, Cal., for respondent.

OPINION AND ORDER

ORRICK, District Judge.

On May 20, 1976, defendant Paul Gordon Elliott entered a plea of guilty to one count of an indictment charging distribution and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). On June 24, 1976, this Court sentenced Elliott to the custody of the Attorney General or his authorized representative under 18 U.S.C. § 4082(a) for a period of three years with a special parole term of three years.

The defendant has now moved the Court pursuant to 28 U.S.C. § 2255 to vacate or modify the sentence on grounds that the presentence report contained materially untrue assumptions concerning defendant's criminal record. For the reasons stated below, the Court denies the motion.

I. FACTS

On February 17, 1976, by prior arrangement, co-defendant David Schneider met an informant and a special agent at the Holiday Inn in San Rafael, California, and negotiated a sale of four pounds of cocaine. Schneider then met Elliott in the parking lot of the Inn and returned with a suitcase containing approximately three quarters of a pound of cocaine in small bags. Surveillance agents arrested Schneider who, after admonition of his *Miranda* rights, indicated that he would introduce the agent to Elliott. The special agent and Elliott met in the lobby of the Inn and discussed terms for the sale of the remaining three and three quarters pounds of cocaine. Elliott was then arrested.

Defendant appeared before the Court on March 8, 1976, and entered a plea of not guilty. The Court accepted the plea and continued the hearing to March 18 at which time it set April 29 to hear motions and May 25 for trial. On May 20, defendant applied for permission to enter a plea of guilty. Elliott signed an approval to institute a presentence investigation and consented to the Court's inspection of the resultant presentence report. The Court referred the matter to the United States Probation Office and scheduled a hearing for a combined entry of plea and judgment on June 24, 1976.

At the sentencing hearing on June 24, the Court entered defendant's plea of guilty after an extensive interrogation to determine whether Elliott understood the import of his decision to waive trial. In answer to one question, defendant stated:

"I made arrangements with the co-defendant, David P. Schneider, to contact people and to make delivery of cocaine on

February 17th at the Holiday Inn in San Rafael. I did in fact deliver the cocaine." RT 6.

The Court then asked defendant's attorney if he wished to offer any comments on behalf of his client. Counsel reviewed the facts of the case in a light favorable to the defendant and objected to certain portions of the presentence report. Specifically, counsel denied the truth of assertions in the report (1) that the cocaine which defendant intended to sell originated in a shipment from San Diego; (2) that the defendant had financed cocaine shipments on prior occasions; (3) that the defendant had sailed to Central America; [1] and (4) that the defendant had been involved with drugs for four years. The Court heard each of these qualifications without comment and, after further discussion, entered the sentence stated above.

Defendant now claims in his motion that the Court relied upon material errors of fact in imposing the sentence. In particular, the defendant contests the accuracy of two paragraphs of the presentence report. The first states:

"The informant in the instant offense confirmed to agents that the defendant had financed large shipments of cocaine smuggled into the United States from South America, that the defendant had sailed via private craft to Central America where he received large shipments of cocaine which were transported back to San Francisco, and that the defendant had financed smuggled cocaine operations for approximately 4 years." Def.'s Motion to Vacate Sentence at 4.

The defendant has offered the affidavits of the co-defendant and two personal friends which indicate that, to the best of affiants' knowledge, Elliott has never left this country. The defendant has also provided a certificate from the Department of State which reveals that a search of Department files disclosed no record of a passport in defendant's name.

The second contested paragraph contains a statement that defendant paid a $250 fine in Milwaukee, Wisconsin, on February 27, 1968, for sale of marijuana. A further investigation of the fine by the United States Probation Office indicates that the presentence report should have referred to the "sale" (a felony) as "possession" (a misdemeanor), but that the record of the incident is otherwise correct.

For the purposes of this motion, and without holding an evidentiary hearing, this Court accepts as true the assertions that defendant does not own a passport, that he has never left this country, and that he was arrested in Milwaukee for possession rather than sale of marijuana. The Court denies, however, that any inaccuracies in the presentence report resulted in a different sentence than would have been imposed in the absence of the contested information. The Court further denies that it assumed the truth of all statements contained in the report. As stated above, the Court knew of possible defects in the paragraph regarding defendant's alleged drug operations in South America at the time of the hearing. Nonetheless, the defendant cites the paragraph containing this information as having influenced the sentence imposed. The moving papers, therefore, contain an inference that the Court was unaware of possible misstatements in the report. Properly conceived, however, the motion to vacate requests the Court to do no more than review its sentence in the light of new information which (1) confirms a doubt as to the accuracy of an assertion that defendant had traveled to Central America to arrange cocaine sales; and (2) corrects a description of a prior drug offense. The Court does not deny that such changes may, on occasion, persuade a judge to modify a sentence. For the purposes of this case, however, the

---

1. The transcript of the hearing contains the phrase "[t]hat Mr. Elliott had *sold* to Central America". RT 13 (emphasis added). The presentence report reads "that the defendant had *sailed* * * * to Central America * * *." (emphasis added). The discrepancy may derive from a mispronunciation by defense counsel or from a mistake in transcription by the court reporter. This opinion uses the word "sailed" on grounds that "sold" makes little grammatical sense and that "sailed" tracks the language of the presentence report.

corrections do not persuade the Court to alter its earlier determination.

## II.  ANALYSIS

The defendant was unaware of *Farrow v. United States*, No. 74–2429 (9th Cir., Sept. 24, 1976), at the time that he moved the Court to vacate his sentence and, therefore, did not present his arguments with reference to the new procedures in this circuit for disposition of claims under 28 U.S.C. § 2255 (hereinafter referred to as 2255 motions). The defendant instead relied upon a line of cases which began with *Townsend v. Burke*, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1947). In *Townsend*, the Supreme Court reversed the conviction of a defendant who, without the aid of counsel, "was sentenced on the basis of assumptions concerning his criminal record which were materially untrue." *Id.* at 741, 68 S.Ct. at 1255. The Court stated that:

> "It is not the duration or severity of [the] sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process." *Id.*

The government, by contrast, drew the Court's attention to the *Farrow* opinion, but provided a wholly inadequate discussion of the many issues which this motion raises. The government simply drew the obvious conclusion that, if the Court relied on the contested information in the presentence report to reach its decision, Elliott should have a new hearing. Given the deficiencies in each brief, the Court would have grounds to ask the parties to submit more detailed statements before rendering a decision. However, because the *Farrow* opinion speaks directly to the subject matter of the instant motion, the Court takes this opportunity to analyze and consider the appropriateness of the new Ninth Circuit rules governing motions to vacate sentences brought after discovery of inaccuracies in presentence reports.

### A.  *Farrow v. United States.*

The *Farrow* opinion discussed "important and far-reaching questions concerning the proper procedures to be employed by a district court in disposing of a motion made under 28 U.S.C. § 2255 in which it [is] alleged that sentence was enhanced on the basis of constitutionally impermissible considerations." *Farrow v. United States, supra*, at 1.[2] The opinion concentrated upon two general types of impermissible considerations: (1) those based upon materially untrue assumptions and which invoke the holding of *Townsend v. Burke*, supra; and (2) those based upon prior invalid convictions and which invoke the holding of *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). The essential elements of the *Townsend* case have been mentioned. In *Tucker*, the defendant received a prison term of twenty-five years for armed bank robbery. The record of the sentencing proceeding indicated that the district court judge had given explicit attention to three prior felony convictions before imposing sentence. *Id.* at 444, 92 S.Ct. 589. A subsequent state court trial determined that two of the three convictions upon which the district judge had relied

2. The opinion in *Farrow v. United States*, No. 74–2429 (9th Cir., Sept. 24, 1976), involved a consolidated appeal by two defendants who contended, among other things, that their trial judges had set prison terms in reliance upon presentence reports containing invalid or untrustworthy information. Defendant Farrow had filed a 2255 motion arguing that four of six prior convictions listed in his presentence report were reached in violation of *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Farrow further challenged assertions that he was the "ringleader" of certain smuggling operations which had led to his arrest. The appearance of Leano marked the second appeal of orders denying a 2255 motion. In an earlier ruling, the Ninth Circuit had remanded the case to the district court for resentencing without consideration of any prior convictions found invalid under *Gideon*. *Leano v. United States*, 494 F.2d 361 (9th Cir. 1974). The district judge had then disposed of the matter by reimposing the original sentence, and Leano filed his second appeal contending that the trial court had again relied upon the contested prior convictions.

were constitutionally invalid because the defendant had neither received nor intelligently waived the assistance of counsel at the bank robbery trial. The defendant, therefore, moved the district court which had set his prison term to vacate its sentence under 28 U.S.C. § 2255. The district judge denied the motion, and the defendant appealed. The Court of Appeals affirmed the original conviction but reversed the sentence stating that there was "a reasonable probability that the defective prior convictions may have led the trial court to impose a heavier prison sentence that it otherwise would have imposed." *Id.* at 446, 92 S.Ct. at 591. The Supreme Court granted certiorari and affirmed the decision of the Ninth Circuit. However, the Court stressed that the basis for its holding lay in the constitutional invalidity of the original sentence under *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

*Townsend* and *Tucker* contained two important similarities. Both cases involved defendants who had received sentences without the aid of counsel, and both involved post-trial hearing practices which violated the due process clause of the federal Constitution. The *Farrow* opinion, however, significantly alters and expands the scope of the *Townsend* and *Tucker* holdings by requiring new hearings for some cases in which the defendant may have had the assistance of counsel and for some cases in which the "materially untrue assumptions" or "prior invalid convictions" may not have risen to constitutional proportions. The *Farrow* rules, therefore, apply to loose categories of so-called *Tucker*-type and *Townsend*-type cases.

### 1. *Tucker-type Cases.*

For both *Tucker*-type and *Townsend*-type cases, the Ninth Circuit has attempted to establish the tests for granting a hearing under 28 U.S.C. § 2255 which states in part:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States * * * or is otherwise subject to collateral attack, may move the Court which imposed the sentence to vacate, set aside or correct the sentence.

\* \* \* \* \* \*

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall * * * grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

The court stated that *Tucker*-type challenges to presumptively valid sentences require that two factors exist at the time of sentencing: "(1) an invalid prior conviction, and (2) consideration of it by the sentencing judge." *Farrow v. United States, supra,* at 2–3. Furthermore, both invalidity and consideration are factual questions for which a hearing is required "unless it can be fairly said, on the motion and the files and records of the case, that the invalidity of the claim is beyond a doubt." *Id.* at 4. Nor would a sentencing judge's informal disclaimer of reliance upon the prior invalid convictions satisfy the Court's interpretation of Section 2255. *Id.* Therefore, "[u]nless the files and records conclusively show the sentencing judge's non-consideration of the priors alleged to be unconstitutional, the denial without a hearing of a *Tucker*-type claim based on such a disclaimer of consideration would be clearly erroneous." *Id.* at 5.

However, the court realized that its suggested hearing would have the effect of pitting the defendant against the judge who had imposed the contested sentence. *Id.* at 5–6. To eliminate the problems posed by such a confrontation, the court adopted a prophylactic rule which states that "whenever the files and records do not conclusively show that there [has] been no consideration of the priors which are alleged to be infirm, the sentencing judge's consideration of them should be presumed." *Id.* at 6. The presumption is rebuttable, but the court hastened to add that "in practice no rebuttal sufficient to

defeat the presumption will normally appear, and its operation will compel a finding of consideration." *Id.* at 8.

The intent of the court in establishing the presumption was to force district judges to articulate "on the record at the time of sentencing their reasons for imposing [a] sentence, or, at the minimum, the information upon which they [have] re[lied]." *Id.*

Furthermore, the court argued that, where practicable, the disposition of a *Tucker*-type claim and any consequent resentencing "should be conducted by a judge other than the one who imposed the original sentence." *Id.* The court gave three reasons for its suggestion that a case be reassigned to a new judge for disposition of the 2255 motion and resentencing: (1) the original judge's recollection of the sentencing proceeding may subconsciously influence a new determination; (2) the original judge may attach some emotional commitment to the correctness of the initial determination; and (3) the original judge may reimpose the same sentence as a "veiled punishment" for challenging the initial determination. *Id.* at 9. In short, the court was concerned not only with fairness itself, but also with the appearance of fairness. *Id.*

The court's rule for *Tucker*-type challenges may, therefore, be summarized as follows:

"When a *Tucker*-type contention is raised by a § 2255 motion, the disposition of that claim, where practicable, should be reassigned to a judge other than the one who imposed the original sentence. If the conclusion is then evident, from motion, files, and records, that the sentencing judge did not consider the prior convictions which are alleged to be infirm, the original sentence will stand. If, however, non-consideration of the priors does not so appear, then the prophylactic rule—avoiding a hearing in which the sentencing judge, pitted against the petitioner, is placed on the witness stand, and simultaneously maintaining the appearance of fairness—will apply, and the sentencing judge's consideration of the priors will be presumed. Thereafter, a hear-

ing should be conducted on the validity of the priors (unless that issue can be conclusively determined from the motion, files, and records of the case). If the priors are found not to be invalid, then the original sentence will stand. If, however, they are determined to be invalid, then the original sentence must be vacated under *Tucker,* and a fresh resentencing conducted by the new judge without consideration of the invalid priors." *Id.* at 18 (footnotes omitted).

In sum, the *Farrow* rules effectively prohibit a district court judge from taking any number of courses of action which have hitherto been acceptable, such as (1) imposing the same sentence though treating the priors as void; or (2) making an informal disclaimer of consideration of prior convictions. *Id.* at 15–16.

### 2. *Townsend-type Cases.*

The factual similarities of the *Tucker* and *Townsend* cases prompted the *Farrow* court to apply largely the same standards to 2255 motions based upon materially untrue assumptions as it applied to motions based upon prior invalid convictions. *Id.* at 19. Therefore, the rule for *Tucker*-type challenges summarized above controls *Townsend*-type challenges as well. The Ninth Circuit added, however, that a 2255 hearing can be correctly avoided if (1) the judge explicitly disclaims reliance on the questionable information at the time of sentencing; (2) the court relies upon the disputed hearsay after a finding, which is not clearly erroneous, that the contested matter is accurate; or (3) the defendant knowingly fails to contest the accuracy of the presentence report at the time of sentencing. *Id.* at 22.

In sum, the *Farrow* rules also prohibit a district court judge from taking a number of courses of action in *Townsend*-type cases which had been commonplace before the Ninth Circuit opinion. *See id.* at 19–20. Of prime importance, the *Farrow* rules shift the burdens of proof in 2255 hearings. The defendant no longer needs to offer evidence to show that the presen-

tence report contains inaccuracies, because the Court now has the obligation to either disclaim reliance on the inaccuracies or to find that the disputed matter is accurate.

B. The *Elliott* Case is Factually Distinguishable from the *Farrow, Tucker* and *Townsend* Cases Thus Foreclosing the Application of the *Farrow* Rules.

The defendant does not allege that his sentence was enhanced through reliance upon prior invalid convictions. This Court, therefore, holds that Elliott can invoke the *Farrow* rules only if his motion constitutes a *Townsend*-type challenge to the sentencing hearing on June 24, 1976. Two important factors, however, distinguish this case from *Townsend* and from so-called *Townsend*-type cases and thereby bar resort to *Farrow*.

### 1. *Materiality.*

The contested information in the presentence report does not contain untrue assumptions of sufficient materiality to warrant either a rehearing or a modification of the original sentence. Defendant's moving papers, if read without reference to the transcript of the hearing, raise issues of fact which appear material on their face. An untrue assumption that a defendant has traveled outside the country to consummate drug deals or has paid a fine for felony sale of marijuana can have an important impact upon a judge's assessment of punishment for a subsequent drug related offense. However, as already stated, the transcript discloses that counsel for the defendant objected to the foreign travel allegation for the first time at the hearing, not in the motion papers. The Court knew of the doubtful validity of this portion of the presentence report when it rendered its decision. The affidavits which confirm the invalidity of foreign travel, therefore, do not inject a novel consideration into the assessment of just punishment, and the Court rejects defendant's contention that the Central American travel information played a material role in its decision.

The untrue assumption that the defendant paid a fine for sale rather than for possession of marijuana is of diminished importance, because the Court attached great weight to the cocaine charge to which defendant pleaded guilty. The Court denies that the record of a marijuana sale more than six years before the hearing would have provided grounds for heavier sentence.

### 2. *Assistance of Counsel.*

A second factor which distinguishes *Elliott* from *Townsend* concerns the presence of counsel at the hearing on June 24, 1976. In *Townsend*, the Supreme Court clearly stated that its decision to reverse the petitioner's conviction depended upon both the existence of materially untrue assumptions and lack of counsel at the trial court proceedings. *Townsend v. Burke, supra,* 334 U.S. at 740–41, 68 S.Ct. 1252. Furthermore, the Court held that the combined absence of representation and misinformation had violated rights guaranteed by the due process clause of the Constitution. *Id.* The unambiguous words of the opinion confirm that the Court did not reverse the conviction of the petitioner merely because the presentence report contained inaccuracies:

"We believe that on the record before us, it is evident that this uncounseled defendant was either overreached by the prosecution's submission of misinformation to the court or was prejudiced by the court's own misreading of the record. Counsel, had any been present, would have been under a duty to prevent the court from proceeding on such false assumptions and perhaps under a duty to seek remedy elsewhere if they persisted. Consequently, on this record we conclude that, while disadvantaged by lack of counsel, this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue. Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand." *Id.* at 740–41, 68 S.Ct. at 1255.

The facts of the instant case bear little resemblance to the facts of *Townsend*. Elliott had the assistance of able counsel at the sentencing hearing who not only questioned the validity of portions of the presentence report but who also spoke at length on Elliott's behalf. In addition, the transcript of the sentencing hearing on June 24, 1976, reveals none of the "facetiousness," "foul play," or "carelessness" which prompted the Supreme Court in *Townsend* to doubt the fairness of the defendant's punishment. This Court believes that the presence of counsel and its impartial conduct of the sentencing hearing renders this case factually distinguishable from and outside the *Townsend* rule.

The original sentence stands.

### C. *Problems Raised by the Farrow Rules.*

On the basis of the foregoing, the Court finds that *Farrow* does not apply to the case at bar. Furthermore, the Court notes that the United States Supreme Court has adopted new rules governing motions under 28 U.S.C. §§ 2254 and 2255 (see Appendix) which became effective February 1, 1977, and which prompted the Ninth Circuit to consider *Farrow en banc* together with a related case. *United States v. Portillo*, No. 76–1834 (9th Cir., filed Mar. 25, 1976). Nonetheless, because other district courts in this circuit may have to consider 2255 motions filed after *Farrow* and prior to February 1, 1977, it seems appropriate to highlight the many weaknesses of *Farrow*, most of which Judge Choy discussed in his well-reasoned dissent. *Farrow v. United States, supra*, at 25–31.

As stated earlier, the *Farrow* opinion defines *Townsend*-type cases without reference to the due process clause. A defendant may bring a 2255 motion by showing that a trial court did not disclaim reliance upon materially untrue information at the time of sentencing. The *Farrow* opinion, however, nowhere defines "materiality." The opinion, therefore, not only modifies *Townsend* by eliminating the need to show constitutional improprieties but also leaves

open the possibility that relatively insignificant court errors could invoke elaborate procedural safeguards. In short, *Farrow* introduces an element of instability into the law of sentencing in the Ninth Circuit and creates many problems which may be summarized in the following numbered paragraphs.

1. *Farrow* tends to induce district court judges to disclaim reliance on any invalid prior convictions or materially untrue information at the time of sentencing. Judge Choy has explained that such a disclaimer is impossible without a full evidentiary hearing during the sentencing proceeding to determine the accuracy of the presentence report. *Id.* at 26 n. 2.

2. Alternatively, *Farrow* induces district court judges to disclaim reliance on *all* priors and *all* other statements contained in the presentence report. However, a procedure under which a judge sentences "blind," so-to-speak, conflicts with theories of modern penology and public policy which require a judge to consider the record of a prisoner before setting a punishment. *Id.*

3. In short, *Farrow* asks the judges of the district court to avoid *Tucker*-type and *Townsend*-type challenges not by explaining their decisions on the record but by considering priors and other information as a practical matter while disclaiming reliance officially. *Id.*

4. The unsatisfactory results described above arise, in part, because the *Farrow* opinion fails to differentiate "awareness" of prior wrongs and invalid information from "enhancement" of punishment. There may be many cases in which a judge is aware of a prisoner's entire criminal history at the time of sentencing. However, awareness does not mean that a judge will enhance a sentence for every instance of wrongdoing that appears in the presentence report. Nonetheless, *Farrow* creates a presumption of consideration and mandates a new hearing by a new judge. The rule contains an implication that the Court of Appeals is unwilling to trust a statement by a district court judge that he did not enhance a punishment on the basis of a conviction later

found to be invalid or on the basis of material information later found to be untrue. In essence, the rule presumes enhancement as well as consideration. *Id.* at 27 n. 3.

5. The *Farrow* court, therefore, stated its hope that, in the future, sentencing judges would articulate their reasons for imposing a particular punishment for the record at the time of sentencing. Although the court does not offer a sample of an acceptable articulation, the opinion would seem to require a district court judge to assign relative weights to the various items in the presentence report. Such a requirement, however, is totally impracticable. Any assignment of weights for the purposes of satisfying *Farrow* would be arbitrary, time-consuming, and unrealistic. *Id.*

6. No other court of appeals has interpreted due process to require the elaborate safeguards which *Farrow* has established for post-trial sentencing proceedings. The court tacitly admitted that it was sailing in uncharted waters when it quoted from an American Bar Association publication describing the broad discretion which the law affords judges for the purpose of imposing sentences. *Id.* at 12. The most recent guidelines for sentencing promulgated by the ABA impose a number of duties upon the judge, but none indicate that the court must scrutinize the presentence report in the meticulous fashion outlined in *Farrow* and none create a presumption of consideration of prior invalid convictions.

7. As stated earlier, the *Farrow* opinion also alters the traditional burdens of proof which apply to challenges under 28 U.S.C. § 2255. Once the petitioner has shown that a prior conviction or material assumption contained in the presentence report has been found invalid, the court is presumed to have considered the misinformation and to have enhanced the defendant's sentence on the basis of its inclusion in the record. The government, and presumably the Court as well, now have the burden of denying both consideration and enhancement, and "proof of a negative" is generally a difficult task.

8. As regards *Tucker*-type challenges in particular, the majority in *Farrow* admits

that the other circuits generally follow the procedure established in *Lipscomb v. Clark,* 468 F.2d 1321 (5th Cir. 1972). *See Farrow v. United States, supra,* at 16 n. 9. The *Lipscomb* rule states:

"On remand, we feel that the following procedures by the district court would be appropriate. First, the district court should review the records involved in this conviction and determine if, treating the state convictions alleged to have been unconstitutional as void and thus not to be considered in sentencing, the five-year maximum sentence would still be an appropriate sentence based on the records of the trial and petitioner's adjusted conviction record (which would still consist of a twenty-five year sentence on a federal counterfeiting charge). If the district court finds that the maximum sentence would still be appropriate, an order so setting forth would seem sufficient to comply with the requirements of *Tucker.* If on the other hand, the district court finds that should these prior convictions be proven unconstitutional and void that the maximum sentence would not be appropriate, then it should grant petitioner an evidentiary hearing and allow him to present evidence on his claim that the prior convictions in question were unconstitutional due to *Gideon.* If the district court is convinced of the validity of petitioner's allegations after such a hearing, it may then properly resentence. Such a procedure seems best designed to fully protect petitioner's rights." *Lipscomb v. Clark, supra,* 468 F.2d at 1323.

*Lipscomb,* therefore, has properly limited its focus to challenges based upon prior *unconstitutional* convictions and has not expanded its reach to cover prior convictions which have been invalidated for other than constitutional reasons. Furthermore, *Lipscomb* permits the sentencing judge to deny a 2255 hearing if he feels that a sentence is appropriate in the light of the reversal of a conviction contained in the presentence report. The *Farrow* decision is the only court of appeals' opinion in the country to mandate a 2255 hearing in all but a limited number of circumstances.

9. The *Farrow* opinion states that the new rules for challenges to sentences exist to prevent a district court judge from informally disclaiming reliance on an invalid conviction or materially untrue assumption without affording a petitioner a hearing to determine the question of consideration. In his dissent, Judge Choy took issue with the majority's use of the phrase "informal disclaimer" by arguing that the responsibilities which attach to all stages of sentencing are far from informal. The dissent states:

"In reevaluating the wisdom of the long-standing practice of having a judge make a 'finding' on his own previous mental state, it is important to remember that the judge is under oath as he is performing a judicial act. Such a finding is anything but 'informal' and obviates the need of his testimony as a witness, violating neither due process nor the hearing requirement of the statute." *Farrow v. United States, supra,* at 28.

Again, the *Farrow* rules seem to imply a distrust of the seriousness with which the district court judges will approach their work.

10. Judge Choy has also questioned the majority's emphasis on the need to avoid a confrontation between the petitioner and the judge as a reason for establishing the presumption of consideration. Judge Choy contends that the case law regarding the issue of confrontation does not specifically indicate that the petitioner would have the right to call and cross-examine the sentencing judge as a witness. *Id.*

11. However, the dissent argues that even if the law permits the sort of confrontation which the majority wishes to avoid, the *Farrow* opinion does not answer the objection that Congress never intended Section 2255 to be used as a vehicle for cross-examination of a sentencing judge. *Farrow* has, in effect, used Section 2255 as a "stepping stone" for the creation of a panoply of rights of which the statute makes no mention. *Id.* at 9.

12. The obligation to assign the resentencing hearing to a new judge is another requirement which demands closer scrutiny.

The *Farrow* opinion justified the disqualification of the original sentencing judge on the grounds that:

(a) A judge's recollections of the original proceeding may have the effect of subconsciously influencing his conduct in the second proceeding;

(b) A judge may develop an emotional commitment to the "correctness" of his original sentence; and

(c) The original sentence may be reimposed as a veiled punishment for petitioning for a review. *Id.* at 9.

Each ground is suspect. The Court of Appeals draws the assumption that the subconscious influence of recollections of an original proceeding will work to the disadvantage of the prisoner on resentencing. The court has again revealed its distrust of district court judges by presuming negative implications from circumstances which can also work to the advantage of the prisoner. For instance, the sentencing judge may recollect that the basis for the punishment depended heavily upon the conviction which has been subsequently overturned. No other person would have the ability to state categorically that a punishment had been set with reference to a particular prior wrong. At the new hearing, therefore, the original judge could reduce the sentence by an appropriate amount. A new judge, however, might leave the sentence untouched.

The *Farrow* court objects, nonetheless, that the sentencing judge may have an emotional commitment to his prior determination. This presumption assumes that judges develop a personal attachment to their decisions. On the other hand, there may be an equally powerful presumption that judges assume a dispassionate approach to their work and have no emotional commitment to a sentence based upon a record which is demonstrably inaccurate.

Lastly, the *Farrow* panel speaks of the possibility of veiled punishments for challenging original sentences. This fear needs little comment other than to say that, if the panel is correct, then it should proceed immediately to strip district court judges of

all vestiges of discretion in any kind of rehearing.

Perhaps the most devastating criticism of the requirement of a new judge for resentencing lies in the following question: What would the Court of Appeals do if a petitioner received a five year sentence from the first judge and twenty-five years from the second even after discounting an invalid conviction or materially untrue information in the record?

13. The *Farrow* opinion stresses not only the need for fairness in resentencing proceedings but also the need for the *appearance* of fairness. Such a concept has a certain degree of validity. Judges, of course, wish to maintain an air of impartiality. However, research has disclosed no due process requirements which have been based upon "appearance of impartiality." The ABA Standards Relating to the Administration of Criminal Justice stress that the judge who imposes an original sentence should be the same judge who sat at the trial or who heard the plea. The ABA bases its recommendation on the trial or hearing judge's familiarity with the prisoner's case. The same principles of familiarity should apply to resentencing despite the protests of the *Farrow* opinion.

14. The *Farrow* decision further fails to relate its holding to other areas of criminal justice in which the judge enjoys wide discretion. On questions concerning the admissibility of evidence and setting an *original* sentence, a judge may reach decisions falling within broad boundaries. Many of the reasons for limited discretion in 2255 challenges would apply equally to these other matters.

15. Before the *Farrow* rules, a district court judge had the ability to rely upon a careful reading of the presentence report by counsel for the defendant. Court and counsel had a chance to satisfy themselves that the prisoner's criminal history was accurate or to raise appropriate objections. *Farrow,* however, has the potential of rendering review of the record by defendant's counsel immaterial for the purposes of appellate review. The district court now has to initiate full scale hearing procedures and introduce all necessary evidence and witnesses to satisfy the Court of Appeals that the petitioner has been resentenced without the tainted influence of the original judge.

16. Lastly, the *Farrow* opinion defines *Tucker* and *Townsend*-type cases in broad terms. *Farrow,* therefore, gives rise to the possibility of a multitude of 2255 challenges in the district courts. *Farrow* cannot justify its broad rule on the ground stated in *Tucker* and *Townsend* that to hold otherwise would subvert important constitutional principles. *Farrow* is forced to reach for other authority for its holding and delves into the social sciences for its theory that its procedures avoid psychological tendencies to maintain the same sentences in 2255 challenges. The *Farrow* court may have opened an inquiry which deserves a great deal of attention by the legal profession. However, the *Farrow* rules establish a form of due process which the Constitution does not demand and which the district court does not have the resources to implement.

## III. CONCLUSION

On the basis of the foregoing, the Court concludes that the facts of the instant case do not indicate that the presentence report contained materially untrue assumptions or that the sentencing hearing involved violations of procedural due process. The Court, therefore, holds that the original prison term of three years with a special three year parole term should remain unchanged and denies the motion to vacate sentence.

## APPENDIX

### The New Federal Rules Governing 2255 Motions.

By order of the Supreme Court, new rules governing proceedings under 28 U.S.C. §§ 2254 and 2255 became effective on February 1, 1977. The new rules contain specific authorization for this Court's dismissal of Elliott's petition without an evidentiary hearing and without reference to a different judge.

"*Rule 4. Preliminary Consideration by Judge*

APPENDIX—Continued

(a) *Reference to judge; dismissal or order to answer.* The original motion shall be presented promptly to the judge of the district court who presided at the movant's trial and sentenced him, or, if the judge who imposed sentence was not the trial judge, then it shall go to the judge who was in charge of that part of the proceedings being attacked by the movant. If the appropriate judge is unavailable to consider the motion, it shall be presented to another judge in the district in accordance with the procedure of the court for the assignment of its business.

(b) *Initial consideration by judge.* The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified. Otherwise, the judge shall order the United States Attorney to file an answer or other pleading within the period of time fixed by the court or to take such other action as the judge deems appropriate.

\*　　\*　　\*　　\*　　\*　　\*

*Rule 8. Evidentiary Hearing*

(a) *Determination by court.* If the motion has not been dismissed at a previous stage in the proceeding, the judge, after the answer is filed and any transcripts or records of prior court actions in the matter are in his possession, shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required. If it appears that an evidentiary hearing is not required, the judge shall make such disposition of the motion as justice dictates."

In promulgating the new Rule 4(a) in particular, the Advisory Committee and the Congress specifically adopted the majority rule, first enunciated in *Carvell v. United States,* 173 F.2d 348 (4th Cir. 1949), that the 2255 motion shall be decided by the judge who imposed sentence. Communication from the Chief Justice of the United States, Rules of Procedure, H.Doc.No. 94–464, 94th Cong., 2d Sess. 153 (1976). The Advisory Committee was cognizant of those cases and comments critical of having the motion decided by the trial or sentencing judge but, nevertheless, believed that it makes good sense administratively for the judge who is "familiar with the facts and circumstances surrounding the trial, and is consequently not likely to be misled by false allegations as to what occurred," to decide the motion. *Carvell v. United States, supra,* 173 F.2d at 348–49.