

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-6-2007

# In Re: Shenango Grp

Precedential or Non-Precedential: Precedential

Docket No. 05-4805

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"In Re: Shenango Grp " (2007). *2007 Decisions.* Paper 352.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/352

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 05-4805

IN RE: SHENANGO GROUP INC.;
SHENANGO INCORPORATED;
THE HOCKENSMITH CORPORATION

Shenango Incorporated,

Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 04-cv-1111
District Judge: The Honorable David S. Cercone

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 15, 2007

Before: SMITH, NYGAARD, and ROTH, *Circuit Judges*

(Filed:   September 6, 2007)

George M. Cheever
Kirkpatrick & Lockhart Preston Gates Ellis
535 Smithfield Street
Henry W. Oliver Building
Pittsburgh, PA 15222
*Counsel for Appellant*

James A. Prostko
Todd T. Zwikl
Suite 600
600 Grant Street
Pittsburgh, PA 15219
*Counsel for Appellee*

---

OPINION

---

SMITH, *Circuit Judge*.

This appeal asks whether Shenango Incorporated, the reorganized debtor, was obligated under the Confirmed Plan of Reorganization to fully fund its Pension Plan to cover an increase in benefits to beneficiaries of so-called window pensions in 2000 and 2001 immediately upon Shenango's determination to grant the enhanced benefits. Shenango contends that the Confirmed Plan of Reorganization did not require full funding of the increase in benefits at the time the decision was made to grant the window pensions. The retired

2

beneficiaries in Class 4B assert that the Confirmed Plan imposed such an obligation.  The Bankruptcy Court agreed with the Class 4B retirees.  The District Court affirmed.  This appeal followed.  For the reasons set forth below, we will affirm the judgment of the District Court.

I.

Shenango filed a voluntary petition for Chapter 11 relief on December 14, 1992.  On March 2, 1994, the Bankruptcy Court confirmed Shenango's Second Amended Joint Plan of Reorganization ("Plan" or "Reorganization Plan").  Under the Plan, the Class 4 Claims concerned retiree benefits.

Section 4.04 of the Reorganization Plan addressed, *inter alia*, the Class 4 retirees' rights to medical benefit coverage, life insurance, and pension benefits.  The introductory clause of this subsection stated that "[n]either Debtors nor any member of the Aloe Controlled Group[, Shenango's Holding Company,] shall have any funding obligations to the Pension Plan as a result of this section 4.04(h), other than the obligations which exist without regard thereto."  Subsection (h) concerned the interest of a subclass of retirees, known as the Class 4B retirees, in the allocation of any Pension Plan surplus.  Paragraph (x) of subsection 4.04(h) pertained to certain conditions regarding amending the Pension Plan.  It specified that the Pension Plan shall be amended to provide, *inter alia*, that none of the assets of the Pension Plan would revert back to the Pension Plan

3

sponsor until all liabilities to Class 4B Claimants had been satisfied by either a distribution of any surplus or a benefit enhancement. Paragraph (x) also specified that until the Class 4B Claimants received their maximum entitlement,

> no benefit increases may be provided for any participants in the Pension Plan who are not Class 4B Claimants, unless ... the Pension Board has determined that Shenango has adequate financial resources to fully fund such increases without taking into account either Surplus then or thereafter expected to be available under the Pension Plan ....

Although the Bankruptcy Court confirmed the Reorganization Plan in March of 1994, it did not issue the final decree until March 3, 1999.

In 1999, the Pension Board switched from a "60/40 investment strategy" to a "dedicated bond portfolio." This proved to be a successful strategy as the Pension Plan captured the appreciation of its assets, thereby allowing it to maintain the surplus which existed at that time.

On August 1, 2000, Shenango and the United Steelworkers of America ("USWA") agreed to an early retirement window pension for 14 individuals. The agreement provided for an additional payment to each recipient for two

years. The total benefits to be paid to the window pension recipients were valued at $1,042,500.00.

In 2001, a second window pension was considered. In May of 2001, Edward Krafft, a retired engineer with Shenango, who was also on the Pension Board as the retiree representative, sent a letter to the Pension Board objecting to the offering of a second window pension to certain active employees because the first window pension agreed to in August of 2000 had yet to be funded. Despite this objection, Shenango and the USWA agreed in August of 2001 to a second window pension. The benefits under this second window pension were valued at $766,600.00. The Class 4B retirees asserted that full funding was required under the terms of § 4.04(h) of the Reorganization Plan at the time the determination was made to grant this second window pension to non-Class 4B retirees, and they demanded that Shenango tender the requisite funding at that point in time. When their demands were not met, the Class 4B retirees' representative filed a motion to reopen the bankruptcy case. The representative simultaneously filed a motion to compel compliance with the Reorganization Plan. Shenango argued that the Bankruptcy Court lacked jurisdiction over this dispute.

In an opinion and recommendation dated July 27, 2004, the Bankruptcy Court concluded that it possessed "related to" jurisdiction under 28 U.S.C. § 157(c). Because this was not a core proceeding, the Bankruptcy Court recommended that the District Court grant the motion to compel compliance. The

5

Bankruptcy Court reviewed the history of the negotiations relating to Shenango's reorganization. For example, the Bankruptcy Court noted that although the retirees had agreed to a reduction in medical benefits, the strategy was valuable because it preserved their status as an unimpaired class and hence their bargaining position. Pension Plan liabilities were also negotiated, according to the Bankruptcy Court. Although "the retirees attempted to obtain a cost of living benefit in their pensions," Bankruptcy Court slip op. at 5, they were able to obtain only a claim on behalf of the Class 4B retirees to a possible pension surplus, and the provision in § 4.04(h)(x) prohibiting any pension increase to other retirees if the increase was not fully funded. In other words, the retirees' negotiations netted only "a prohibitory benefit, that is, no increased benefits to new retirees unless increased benefits were fully funded. That provision protects both a potential surplus and also helps delay a potential deficiency in the pension fund." Bankruptcy Court slip op, at 5. The Aloe Controlled Group also received a valuable benefit, the Bankruptcy Court explained, as it was "relieved of [its] obligation to fund the pension plan under certain conditions." Bankruptcy Court slip op. at 15.

Against this backdrop, the Bankruptcy Court noted that the parties relied upon the text of the Reorganization Plan to support their respective positions in the funding dispute. According to the Class 4B retirees, the requirement to fully fund the Pension Plan at the time the decision was made to grant the window pension was set forth in § 4.04(h)(x), which specified

6

that no increase shall be provided "unless the Pension Board has determined that Shenango has adequate financial resources to fully fund such increases without taking into account either Surplus ...." Shenango refused to fund the benefit increases based on the Reorganized Plan's statement in § 4.04(h) that it shall not have "funding obligations to the Pension Plan as a result of this section ...." After consideration of these provisions, the Bankruptcy Court declared that the Reorganization Plan was not ambiguous and that there was a "clear duty imposed upon Shenango to fully fund benefit increases without taking into account either surplus then or thereafter expected to be available, otherwise, the provision of § 4.04(h)(x)(1) is rendered a nullity." The Bankruptcy Court pointed out that fully funding any increase in benefits "clearly prevents dilution and prevents an earlier failure of the pension fund," that Shenango essentially paid "for the window pensions with the appreciated values in the pension fund because these higher values exceeded ERISA minimums," and that Shenango's "shareholders benefitted from the use of the appreciated status of the Pension Plan to fund the costs of increased benefits with no expense to Shenango." The Bankruptcy Court concluded, based on the language of the Plan and the circumstances, that the first part of § 4.04(h)(x) prohibits pension benefit increases, but the latter part creates an express exception permitting "increased benefits if the Pension Board has determined that Shenango has adequate financial resources to fully fund such increases without taking into account surplus." Bankruptcy Court slip op. at 18. Accordingly, the

7

Bankruptcy Court recommended that Shenango be directed to fund the window benefits at the amount of their valuation, plus interest, and that Shenango be enjoined from granting future benefits without fully funding such increases.

On September 27, 2005, the District Court adopted the Bankruptcy Court's opinion and recommendation, and directed Shenango to "fund the pension plan in the amounts of $1,042,500.00 and $766,660.00, as damages for breach of contract, plus interest in the amount of seven percent ...." This timely appeal followed.

## II.

Shenango contends that the Bankruptcy Court did not have "related to" jurisdiction under 28 U.S.C. § 157(c) over this post-confirmation dispute. It relies on *In re Resorts International, Inc.*, 372 F.3d 154, 169 (3d Cir. 2004), which concluded that "related to" jurisdiction was lacking over a post-confirmation malpractice claim by the trustee of a litigation trust against the trust's accountants. Although there are a few similarities between this case and *Resorts International*, we conclude that the Bankruptcy Court correctly determined that it had "related to" jurisdiction.

In *Resorts International*, we reiterated that "'[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively

8

or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" 372 F.3d at 164 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). We recognized that "related to" jurisdiction is limited and that it "'does not extend indefinitely, particularly after the confirmation of a plan and the closing of a case.'" *Id.* (quoting *Donaldson v. Bernstein*, 104 F.3d 547, 553 (3d Cir. 1997)). Thus, "the scope of bankruptcy court jurisdiction diminishes with plan confirmation," *id.* at 165, and the essential inquiry post-confirmation is "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction ...." *Id.* at 166-67. "Matters that affect the interpretation, implementation, consummation, execution or administration of the confirmed plan will typically have the requisite close nexus." *Id.* at 167.

Applying these principles, we concluded in *Resorts International* that the close nexus for "related to" jurisdiction was lacking. Inasmuch as the malpractice action was initiated post-confirmation and the bankruptcy estate no longer existed, we noted that the malpractice claim could not affect the bankruptcy estate. Because the debtor was not a party to the action, we observed that the malpractice action could have "only incidental effect on the reorganized debtor." *Id.* at 169. We also pointed out that the malpractice claim could not interfere with the implementation of the Reorganization Plan or affect the creditors as they were no longer creditors of the bankruptcy estate but beneficiaries of the litigation trust. *Id.*

9

*Resorts International* is instructive. It teaches that the mere fact that a dispute may arise post-confirmation is not determinative of the jurisdictional question. Rather, the inquiry is multi-faceted. *Id.* Consistent with that approach, and even though the dispute arose post-confirmation as in *Resorts International*, we conclude that the retirees' claim that Shenango is obligated by the Reorganization Plan to immediately fund the Pension Plan has a close nexus with the bankruptcy proceeding.

Unlike *Resorts International*, where the debtor was not a party to the malpractice action, here, Shenango is a party to the dispute. This dispute concerns Shenango's Reorganization Plan and the interpretation of the Plan's provision relating to the debtor's liability for fully funding any benefit increases to participants of the Pension Plan other than the Class 4B retirees. That potential liability supplies the close nexus. Based on the valuations of the benefits under the window pensions, the effect on the debtor's liabilities will be more than incidental.

Accordingly, we conclude that the Bankruptcy Court appropriately exercised "related to" jurisdiction under 28 U.S.C. § 157(c), and that the District Court had appellate jurisdiction under 28 U.S.C. § 158(a). We have authority to review the

District Court's final judgment under 28 U.S.C. § 158(d)(1).[1]

## III.

Shenango contends that the Bankruptcy Court erred because there is only one reasonable construction of the Reorganization Plan and that interpretation is that Shenango is not obligated to fully fund any increase in benefits to other participants in the Pension Plan at the time the determination is made to grant the enhanced benefits. The Class 4B retirees submit that the Bankruptcy Court correctly construed the provision to require advance funding of any increase in pension benefits granted to other participants. Because the parties each press their interpretation of §4.04(h)(x), we must consider the alternate constructions and whether the Reorganized Plan is ambiguous.

## A.

[1]In *Resorts International*, we acknowledged that the plan of reorganization contained a retention of jurisdiction provision. We instructed, however, that such a provision was irrelevant if jurisdiction was lacking under 28 U.S.C. § 1334 or 28 U.S.C. § 157. 372 F.3d at 161. Heeding this instruction, we have analyzed whether there was jurisdiction under § 157, and have not placed any independent weight upon the retention of jurisdiction provision in Shenango's Reorganization Plan.

11

In construing a confirmed plan of reorganization, we apply contract principles. *See Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993); *In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir. 1981). Because the construction of a contract generally presents a question of law, we exercise plenary review. *See Universal Minerals, Inc. v. C. A. Hughes & Co.*, 669 F.2d 98, 101 (3d Cir. 1981) (observing that "we employ the fullest scope of review" to the application of legal precepts). We must be mindful, however, that a confirmed plan of reorganization is an order of the bankruptcy court. *See* 11 U.S.C. §§ 1129 (providing that the "court shall confirm a plan"), 1141, 1143, and 1144 (referring to the order of confirmation). There is a difference between reviewing the straightforward application of contract principles, and reviewing a bankruptcy court's interpretation of its own order contained in a confirmed plan of reorganization. This Court has yet to adopt a standard for reviewing a bankruptcy court's interpretation of its own order.

Several of our sister courts of appeals have considered what standard of review should be employed when reviewing a bankruptcy court's interpretation of its own order. In *Matter of Weber*, 25 F.3d 413 (7th Cir. 1994), after acknowledging that the confirmed plan of reorganization was ambiguous, the Seventh Circuit concluded that the District Court erred by conducting *de novo* review of the Bankruptcy Court's interpretation of the plan. It declared that the "reviewing court should extend to that interpretation the same deference that is

12

otherwise paid to a court's interpretation of its own order." *Id.* at 416. It reasoned that the bankruptcy court's interpretation was based on an assessment of "'words on which [the court] has already passed judgment. Under these circumstances, we believe that full deference to the court's decision is in order.'" *Id.* (quoting *Matter of Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 961 F.2d 1260, 1264 (7th Cir. 1992)). In *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 983 (1st Cir. 1995), the First Circuit agreed that deferential review of the scope of the confirmation order was appropriate "because the bankruptcy court was directly engaged in the give-and-take of the confirmation proceedings and had the better vantage point ...."[2]

[2] *See also In re Dow Corning Corp.*, 456 F.3d 668, 677 (6th Cir. 2006) *cert. denied* 127 S.Ct. 1874 (2007) (explaining that, because the phrase in the plan had more than one interpretation, bankruptcy court's ultimate interpretation was subject to review for an abuse of discretion); *In re Optical Tech., Inc.*, 425 F.3d 1294, 1300 (11th Cir. 2005) (adopting the deferential approach of the Seventh and Eighth Circuits); *In re Dial Business Forms, Inc.*, 321 F.3d 738, 744 (8th Cir. 2003) (following the approach set forth in *In re Weber*); *In re Bono Dev., Inc.*, 8 F.3d 720, 721-22 (10th Cir. 1993); *In re Terex Corp.*, 984 F.2d 170, 172 (6th Cir. 1993) (concluding that the bankruptcy court's interpretation of confirmation plan was subject to deferential review); *but see In re Duplan Corp.*, 212 F.3d 144 (2d Cir. 2000) (stating that the bankruptcy

13

The Fourth Circuit found the First Circuit's decision in *Monarch Life* instructive in *In re Tomlin*, 105 F.3d 933 (4th Cir. 1997). In *Tomlin*, the Court initially had to review whether the bankruptcy court's order was ambiguous. The Court instructed that this inquiry was subject to *de novo* review. *Id.* at 936. After determining that the order was in fact ambiguous, the Court considered its standard of review over the bankruptcy court's interpretation of its order, and concluded that substantial deference to the bankruptcy court's analysis of its own order was appropriate. *Id.* at 941. Because the record demonstrated that the bankruptcy court's interpretation was reasonable under the circumstances, it effectively reinstated the bankruptcy court's order.

The appeal in *In re National Gypsum Co.*, 219 F.3d 478 (5th Cir. 2000), required the Court to review a bankruptcy court's interpretation of its confirmation order. It recognized that its review of the bankruptcy court's interpretation was deferential, but it pointed out that it need not defer if there was no ambiguity to interpret. *Id.* at 484. Because the plan of reorganization was not ambiguous, the Fifth Circuit refused to

---

court's interpretation of text of the plan, confirmation order and final decree was a conclusion of law subject to plenary review, and failing to acknowledge precedent in *Comm'n of Dep't of Publ. Util. v. New York, N. H. & H. R. Co.*, 178 F.2d 559, 563-4 (2d Cir. 1949), that a court's construction of a plan of reorganization is entitled to great weight).

14

defer to the bankruptcy court's interpretation, which ignored the plain meaning of the plan documents.

The approach employed in *In re Tomlin* and *National Gypsum* demonstrate that an appellate court must distinguish between the review of a bankruptcy court's application of legal principles and the review of a bankruptcy court's actual interpretation of an ambiguous provision in its own order. As the Eleventh Circuit pointed out in *In re Optical Technologies*, simply because a bankruptcy court's interpretation of its order is entitled to deference does not "insulate all aspects of the bankruptcy court's opinion from anything more searching than abuse of discretion review. The rationale for deferring to a court's interpretation of its own order does not extend to its analysis of broad legal principles ...." 425 F.3d at 1303.

We agree with the majority view that a bankruptcy court's interpretation of its own order ought to be subject to review for an abuse of discretion. This deferential standard should not apply, of course, if the issue being reviewed presents only a question of law. *Id.* This bifurcated approach both ensures the appropriate role of this Court to review *de novo* pure questions of law, and also accords great weight to the Bankruptcy Court's construction of an order with which it is familiar by virtue of its direct involvement in the proceedings. Thus, we conclude that the initial inquiry of whether Shenango's Reorganization Plan is ambiguous is subject to *de novo* review. If the Plan is ambiguous, we will defer to the Bankruptcy

15

Court's interpretation unless it is unreasonable under the circumstances.

B.

Shenango's Reorganization Plan provides that it "shall be governed by, and construed and enforced in accordance with the laws of the Commonwealth of Pennsylvania." Under Pennsylvania law, the paramount consideration in construing a contract is the intent of the parties. *Mellon Bank, N.A. v. Aetna Bus. Credit*, 619 F.2d 1001, 1009 (3d Cir. 1980). "The strongest external sign of agreement between contracting parties is the words they use in their written contract." *Id.* "Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." *Bohler-Uddeholm, Inc. v. Ellwood Group*, 247 F.3d 79, 93 (3d Cir. 2001) (internal citation and quotation marks omitted). If the contract terms are ambiguous and susceptible to more than one reasonable interpretation, however, the meaning of the contract must be interpreted by the factfinder. *Id.* at 94; *Mellon Bank*, 619 F.2d at 1011, n.10. We review *de novo* the determination of whether a provision in a confirmed plan of reorganization is ambiguous. *See Bohler-Uddeholm*, 247 F.3d at 92 (noting that whether a contract is ambiguous is a question of law subject to plenary review).

Here, the Bankruptcy Court appropriately considered whether § 4.04(h) of the Plan contained an ambiguity as to

16

Shenango's funding obligation for any increase in pension benefits. It declared that the Plan was not ambiguous and that there was a clear duty imposed upon Shenango to fully fund the increase. We agree with the Bankruptcy Court that the Plan clearly obligates Shenango to fully fund any increase in pension benefits to participants in the Pension Plan other than Class 4B retirees. We conclude, however, that § 4.04(h)(x) of the Reorganized Plan does not address the timing of Shenango's funding obligation and that the alternative interpretations offered by the parties are plausible. In short, § 4.04(h)(x) of the Reorganized Plan is ambiguous with respect to the temporal component of Shenango's funding obligation for any increase in benefits to other Pension Plan participants.

Section 4.04(h)(x) precludes an increase for other participants in the Pension Plan "unless . . . the Pension Board has determined that Shenango has adequate financial resources to fully fund such increases without taking into account . . . [the] Surplus . . . ." As the Bankruptcy Court determined, this provision may be construed as implicitly imposing a duty upon Shenango to fully fund any increase in benefits at the time when the determination is made to grant the enhancement.

Shenango's alternative construction is that its funding obligation for any increase in benefits to other pension participants is governed by ERISA, that statute's penalty provisions, and other federal law applicable to pension plans. This alternative is not inconsistent with § 4.04(h)(x) because the

17

plain words of that provision demand only that the Pension Board make a decision as to Shenango's financial ability to fully fund such an increase before the increase may be granted. It is silent with regard to whether Shenango must immediately tender the requisite funding for an increase in benefits to other participants at the time the benefits are granted or at some later point in time. Thus, § 4.04(h)(x) does not clearly establish whether the parties intended Shenango's funding obligation to accrue when the determination is made to grant participants other than Class 4B retirees an increase in benefits or at some later point as required by ERISA, its penalty provisions, and other laws governing pension plans.

Although the Bankruptcy Court failed to recognize the ambiguity in § 4.04(h)(x) with respect to the temporal component of Shenango's funding obligation, we need not vacate the District Court's judgment, which adopted the Bankruptcy Court's analysis, and remand for an interpretation of this provision of the Plan. Such a course is unnecessary because the Bankruptcy Court's analysis included findings of fact, which are not disputed, that support its conclusion that Shenango was obligated to tender the funding immediately upon a determination to increase benefits for participants other than the Class 4B retirees. *See In re Dow Corning Corp.*, 456 F.3d at 677 (disagreeing with Bankruptcy Court's determination that the Plan was not ambiguous, and proceeding to review question of whether Court's interpretation was an abuse of discretion).

18

We find no abuse by the Bankruptcy Court in its determination that the Reorganization Plan required Shenango to advance the funding for any increase in pension benefits to participants other than Class 4B retirees at the time when the determination was made to grant such an enhancement. The Court considered the context of the dispute and the history of the negotiations between the parties which resulted in the retirees' claim to the pension plan surplus. It pointed out that the Reorganization Plan not only established a claim by the retirees to any surplus, but also endeavored to protect any surplus and avoid a deficiency. Interpreting the Plan to require Shenango to tender the funding necessary for any increase in benefits to other pension plan participants at the time the determination is made to grant such an increase, regardless of when funding may be dictated by other laws, furthers this objective. The immediacy of the funding requirement was also consistent, the Bankruptcy Court noted, with the fact that Shenango had fully funded earlier increases in benefits to participants other than Class 4B retirees. In addition, the Bankruptcy Court observed that financial statements for 1997 and 1998 referenced the fact that Shenango was obliged under the Reorganization Plan to fund any benefit increases to certain participants in the Pension Plan "'irrespective of whether or not required by ERISA minimum funding requirements ....'"

Accordingly, we defer to the interpretation of the Bankruptcy Court, which was directly involved in this lengthy and complex proceeding. The interpretation that funding was

19

required immediately upon a determination to grant an enhancement in benefits to participants other than Class 4B retirees is not contrary to the Reorganized Plan. As there is factual support for this interpretation, we will affirm the District Court's judgment.

20