NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

—————

NO. 08-4728

—————

LEONARD WATTS,
                                                    Appellant

v.

UNITED STATES OF AMERICA

—————

On Appeal From the United States
District Court
For the District of New Jersey
(D.C. Civil Action No. 1-08-cv-00757)
District Judge:  Hon. Noel L. Hillman

—————

Argued May 27, 2010

BEFORE:  McKEE, *Chief Judge*, RENDELL and
STAPLETON, *Circuit Judges*

(Opinion Filed: July 13, 2010)

—————

Christopher H. O'Malley
Julie A. McGrain (Argued)
Office of Federal Public Defender
800-840 Cooper Street - Suite 350
Camden, NJ  08102
 Attorneys for Appellant

Paul J. Fishman
George S. Leone
Office of United States Attorney
970 Broad Street
Newark, NJ 07102
  and
Norman Gross (Argued)
Office of United States Attorney
401 Market Street
Camden, NJ 08101
  Attorneys for Appellee

---

OPINION OF THE COURT

---

STAPLETON, Circuit Judge:

Leonard Watts appeals the denial of his motion filed pursuant to 28 U.S.C. § 2255. Because Watts waived his right to file that motion in his plea agreement, we will dismiss his appeal.

I.

Watts pled guilty in the District Court for the District of New Jersey ("District Court") to one count of attempted bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2, and signed a plea agreement containing the following provision:

> Leonard Watts knows that he has and, except as noted below in this paragraph, voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence

imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from a total Guidelines offense level of 23. This Office will not file any appeal, motion or writ which challenges the sentence imposed by the sentencing court if that sentence falls within or above the Guidelines range that results from a total Guidelines offense level of 23. Both parties reserve any right they may have under 18 U.S.C. § 3742 to appeal the sentencing court's determination of the criminal history category. The provisions of this paragraph are binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, if the sentencing court accepts a stipulation, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so.

App. at 25.

At sentencing, the District Court determined that Watts's advisory range under the Sentencing Guidelines was 57 to 71 months, based on an adjusted offense level of 23 and a criminal history category of III.[1] The criminal history category resulted from a criminal history score of five – three points for a prior Hobbs Act conviction in the District Court for the Eastern District of Pennsylvania, and two points pursuant to U.S.S.G. § 4A1.1(d), because, at the time Watts committed the attempted bank robbery, he was serving a term of supervised release stemming from the Hobbs Act conviction. The District Court

---

[1] A Guidelines range is determined by the intersection of the offense level and the defendant's criminal history category. *See United States v. Lianidis*, 599 F.3d 273, 277 (3d Cir. 2010) ("The 16-level increase resulted in a total offense level of 25, which, when combined with [defendant's] criminal history category of I, produced an advisory Sentencing Guidelines range of 57 to 71 months of imprisonment."); *see also* U.S.S.G. ch. 5, pt. A, n.1 ("The intersection of the Offense Level and Criminal History Category displays the Guideline Range in months of imprisonment.").

3

ultimately sentenced Watts to, *inter alia*, 70 months' imprisonment. Watts did not appeal this sentence.

Watts subsequently obtained an order from the District Court for the Eastern District of Pennsylvania vacating the supervised release term that served as a predicate for his sentencing enhancement on grounds that it was not authorized by the supervised release statute, 18 U.S.C. § 3583(e). Watts then instituted this action by filing a motion pursuant to 28 U.S.C. § 2255 in the District Court, seeking to vacate his sentence imposed for the attempted bank robbery. Watts argued that, due to the vacation of the supervised release term, he was entitled to resentencing without application of the two criminal history points because he was not serving a lawful term of supervised release when he committed the attempted bank robbery. The Government opposed this motion.

The District Court denied Watts's § 2255 motion, and he appealed. We remanded to the District Court with instructions to either issue a certificate of appealability or state reasons why such a certificate should not issue. The District Court ruled that no certificate of appealability should issue. Watts then filed a motion for a certificate of appealability in this Court, which was unopposed. A motions panel of our Court granted the motion, and this appeal followed.[2]

II.

---

[2] The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 2255. We have jurisdiction under 28 U.S.C. §§ 1291, 2253, and 2255(d).

4

The District Court denied the § 2255 motion on the merits of Watts's claim, ruling that in light of the plain language of U.S.S.G. §§ 4A1.1 and 4A1.2, a § 2255 petitioner is eligible for resentencing where a prior conviction that served as a sentencing enhancement was vacated, but not, as here, where only a prior sentence was vacated.[3] We do not reach this issue, however, because we conclude that the waiver of review provision in Watts's plea agreement precludes this § 2255 motion.

"We exercise plenary review in deciding whether an issue raised by a defendant falls within the scope of an appellate waiver in his plea agreement." *United States v. Goodson*, 544 F.3d 529, 537 n.6 (3d Cir. 2008) (citing *United States v. Joyce*, 357 F.3d 921, 922 (9th Cir. 2004)). "In determining the scope of a plea agreement's appellate-waiver provision, we are guided by the well-established principle that plea agreements, although arising in the criminal context, are analyzed under contract law standards." *United States v. Corso*, 549 F.3d 921, 927 (3d Cir. 2008) (internal quotations omitted).

---

[3] U.S.S.G. § 4A1.1(d) requires the imposition of two criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including . . . supervised release." "[A] 'criminal justice sentence' means a sentence countable under § 4A1.2 . . . having a custodial or supervisory component . . ." U.S.S.G. § 4A1.1 cmt. n.4. A "'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of *nolo contendere*, for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). Under Application Note 6 to § 4A1.2:

> Sentences resulting from convictions that (A) have been reversed or vacated because of errors of law or because of subsequently discovered evidence exonerating the defendant, or (B) have been ruled constitutionally invalid in a prior case are not to be counted.

U.S.S.G. § 4A1.2 cmt. n.6.

"Thus, the language of a waiver, like the language of a contract, matters greatly." *Goodson*, 544 F.3d at 535. However, "'in view of the government's tremendous bargaining power, we will strictly construe the text against it' as the drafter of plea agreements to the extent the agreement is ambiguous." *United States v. Rivera*, 357 F.3d 290, 295 (3d Cir. 2004) (quoting *United States v. Baird*, 218 F.3d 221, 229 (3d Cir. 2000)). A contract term is ambiguous if it is "susceptible to more than one reasonable interpretation." *In re Shenango Group Inc.*, 501 F.3d 338, 346 (3d Cir. 2007).

The waiver provision here is not susceptible to more than one reasonable interpretation. The waiver's plain language provides that Watts surrendered all challenges, including a § 2255 motion, to a sentence falling "within or below the Guidelines range that results from a total Guidelines offense level of 23," except that he could, "under 18 U.S.C. § 3742 . . . appeal the sentencing court's determination of the criminal history category." App. at 25. Thus, Watts could challenge his sentence via § 2255 motion only if it exceeded any Guidelines range resulting from an offense level of 23 (regardless of the criminal history category), and Watts could challenge the District Court's criminal history category determination only on direct appeal, because the waiver provision specifically states that such a challenge can be only under 18 U.S.C. § 3742. Watts could have reserved his right to challenge his criminal history category by way of a § 2255 motion, but he did not.

6

It is undisputed that Watts's sentence falls within the Guidelines range resulting from an offense level of 23, and so he may not challenge his sentence by way of a § 2255 motion. He could have challenged the District Court's criminal history category determination via direct appeal by "fil[ing] a notice of appeal in the district court for review of an otherwise final sentence," 18 U.S.C. § 3742(a), but he did not do so. In short, Watts is attempting to challenge his criminal history category by way of a § 2255 motion. By the plain terms of the waiver provision, he is foreclosed from doing so.

III.

Watts also contends that we should not enforce his waiver of review based on our decision in *United States v. Khattak*, 273 F.3d 557 (3d Cir. 2001). In *Khattak*, we held that "waivers of appeals are generally permissible if entered into knowingly and voluntarily," and we enforced the appellate waiver at issue in the case. *Id.* at 558, 563. However, we "decline[d] to adopt a blanket rule prohibiting all review of certain otherwise valid waivers of appeals," and noted that "[t]here may be an unusual circumstance where an error amounting to a miscarriage of justice may invalidate the waiver." *Id.* at 562. We nevertheless declined to "delineate[] specific instances in which waiver-of-appeals provisions may be found invalid." *Id*. at 562.

The concept of "miscarriage of justice" in this context must be given its content with sensitivity to that context. First, the "miscarriage of justice" issue does not arise unless and until, as here, there has been a determination that the waiver was voluntary and

7

informed and that the defendant has received valuable consideration for it.[4]  In the absence of enforcement of the waiver in a case, the defendant will receive the benefit of his bargain without paying the bargained for price and, in the absence of consistent enforcement, the government will justifiably cease to bargain in this area.  Moreover, we must keep in mind that "miscarriage of justice" issues will normally arise in cases where the issue the defendant wishes reviewed holds the potential for the avoidance of substantial incarceration.  Accordingly, if avoidance of a substantial period of incarceration is viewed as the basis for a miscarriage of justice finding whenever the defendant has a litigable issue, plea bargaining over the right to review will cease to be viable.  Accordingly, the concept of "miscarriage of justice" in this context must be construed and applied in a manner that will foreclose pursuit of "garden-variety claims of error."  *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir. 2001).

At the time of Watts's sentencing for attempted bank robbery, the sentencing court correctly recognized that he had knowingly attempted to rob a bank while in the custody of a court of competent jurisdiction serving a term of supervised release.  As of the time of that sentencing, there can be no dispute that the sentencing court acted properly.  It correctly understood the facts and failed to reach the issue Watts now seeks to litigate only because it was not ripe and, accordingly, not raised.  At all times since, the judgment

---

[4] Watts does not "dispute that he entered into his plea agreement, including his waiver of appeal and collateral attack, knowingly and voluntarily."  Appellant's Reply Br. at 5.

of conviction in the District Court for the Eastern District of Pennsylvania for violation of the Hobbs Act has remained a valid conviction. The term of supervised release has been vacated, however. The issue that Watts wishes to place before us is whether the modification of the Hobbs Act sentence after the attempted bank robbery requires resentencing on the attempted bank robbery offense. This turns on how one construes U.S.S.G. §§ 4A1.1(d) and 4A1.2. The government insists that because the Hobbs Act conviction was valid and outstanding at the time of the alleged bank robbery, Watts was under a "criminal justice sentence . . . countable under § 4A1.2 [and] having a custodial or supervisory component." U.S.S.G. § 4A1.1 cmt. n.4. As a result, the sentencing court was required by U.S.S.G. § 4A1.1(d), in the government's view, to add two criminal history points in determining Watts's Guideline range and would be required to do precisely the same were he resentenced. Watts, on the other hand, insists that since the custodial component of the sentence was invalid at the time of his attempted bank robbery the Court at resentencing would be required to determine his Guideline range without the addition of two criminal history points.

Watts has failed to identify any "unusual circumstance" in this case by reason of which enforcement of his concededly voluntary and informed waiver could be viewed as occasioning a "miscarriage of justice." Nor do we perceive any such "unusual circumstance." Watts and the government disagree regarding the proper construction of a Sentencing Guideline. Such disagreements occur regularly in federal courts. While

9

Watts appears to present an issue of first impression, we made clear in *Khattak* that "waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues . . . . While it may appear unjust to allow criminal defendants to bargain away [potentially] meritorious appeals, such is the necessary consequence of a system in which the right to appeal may be freely traded." *Khattak*, 273 F.3d at 562 (quoting *United States v. Howle*, 166 F.3d 1166, 1169 (11th Cir. 1999)).

Watts stresses that if his reading of the Guidelines is correct his Guideline range on resentencing would be 51 to 63 months as opposed to 57 to 71 months. Accordingly, success on his § 2255 motion holds the potential for a substantial reduction in his term of incarceration. This is not unusual in a case of an alleged error which produced an attempted bank robbery conviction, however, and this potential for a reduction of sentence must be kept in perspective. One of the viable charges that the government abandoned in the plea agreement was carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). Had Watts been convicted of that offense, he would have been subject to a mandatory minimum sentence of five years of incarceration, to be served consecutively to any sentence he received for the attempted bank robbery conviction. 18 U.S.C. § 924(c)(1)(A)(i).

While there are, of course, situations in which an "illegal sentence" has been found to justify holding a waiver of review to be unenforceable, they do not resemble the situation here presented. Findings of a "miscarriage of justice" have been limited to cases

10

like those in which the sentence was "based on constitutionally impermissible factors (say, race or ethnicity)," where "the plea proceedings were tainted by ineffective assistance of counsel," where "the trial court impose[d] a sentence exceeding the maximum penalty permitted by law," or where the sentence "violate[d] a material term of the plea agreement." *Teeter*, 257 F.3d at 25 nn.9-10 (surveying the case law involving "illegal sentences"). Watts's allegedly erroneous sentence was 70 months, well short of the 20 year maximum for attempted bank robbery, 18 U.S.C. § 2113(a), and there were no other comparable circumstances involved. Our review confirms that the illegal sentence case law is consistent with the proposition that "the illegal sentence exception to the general enforceability of an appeal waiver is an extremely narrow exception" and with the proposition that "an allegation that the sentencing judge misapplied the Sentencing Guidelines . . . is not subject to appeal in the face of a valid appeal waiver." *United States v. Andis*, 333 F.3d 886, 892 (8th Cir. 2003) (en banc) (surveying cases).

Watts suggests that constitutional concerns are implicated in this matter because the enhancement of his bank robbery sentence was based on a mistake of fact.[5] However,

---

[5]Watts contends that the alleged error here violated his right to due process "because the district court imposed a sentence founded at least in part upon misinformation" concerning his criminal record, citing *Townsend v. Burke*, 334 U.S. 736 (1948), and *United States v. Tucker*, 404 U.S. 443 (1972). Appellant's Br. at 19-20. There are several problems with this argument. First, it was not raised before the District Court and has, accordingly, been waived. Second, the judge imposing the challenged sentence had an accurate understanding of Watts's criminal record as it existed at the time of the sentencing. Finally, *Townsend* and *Tucker* are distinguishable. The defendant in *Townsend* was sentenced without having counsel represent him and, as a result, the

11

this is not a case where an enhancement was based on a misunderstanding of the facts as they existed at the time of the enhancement. Nor is it a case in which an enhancement rests upon an unconstitutional prior judgment. Rather, this is a case in which the court sentencing on the Hobbs Act violation imposed a supervised release term that was inconsistent with the statute authorizing it, and Watts did not bring this to the attention of that court until after he was sentenced for his attempted bank robbery. Having thereafter secured relief from the improperly imposed supervised release, we assume he would have been entitled, absent his waiver of collateral review, to seek resentencing on the bank robbery charge. In short, we perceive no due process concerns at issue here.

This is a dispute over the proper construction of the Sentencing Guidelines. Watts raises a litigable issue, but his claim of error is of the "garden variety" and enforcement of his voluntary and knowing waiver of review will not occasion a "miscarriage of justice." Indeed, if this case were held to involve unusual circumstances barring enforcement of a waiver of review, we would be at a loss to hypothesize a case that would not.

---

sentencing court considered crimes of which the defendant was acquitted. The holding in *Townsend* was that "the disadvantage from absence of counsel, when aggravated by circumstances showing that it resulted in the prisoner actually being taken advantage of, or prejudiced, does make out a case in violation of due process." *Townsend*, 334 U.S. at 739. Similarly, in *Tucker*, the Supreme Court dealt with "a sentence founded at least in part upon misinformation of a constitutional magnitude," because "the sentencing judge gave specific consideration to the [defendant's] previous convictions before imposing sentence upon him," and "it is now clear that two of those convictions were wholly unconstitutional under *Gideon v. Wainwright*, 372 U.S. 335." *Tucker*, 404 U.S. at 447. Thus, like in *Townsend*, the misinformation concerning the defendant's record was caused by an underlying constitutional violation.

12

This appeal will be dismissed.[6]

---

[6] Chief Judge McKee believes that under the very unique circumstances here, the sentencing court should have an opportunity to consider whether the sentence that was imposed for the attempted bank robbery would have been different if the court had known that the defendant was not actually serving a term of supervised release at the time of the attempted bank robbery. Accordingly, notwithstanding that some may view this as a "garden-variety claim[] of error" under *United States v. Teeter*, 257 F.3d 14, 26 (1st Cir. 2001), he would find that this case falls under the "miscarriage of justice" exception to enforcing appellate waivers set forth in *United States v. Khattak*, 273 F.3d 557 (3d Cir. 2001), and remand to afford the District Court an opportunity consider whether any reduction in the sentence that was imposed is now appropriate.